In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1433

CRAIG E. GEARING,

Plaintiff-Appellee,

v.

CHECK BROKERAGE CORPORATION
and DREW T. ERWIN,

Defendant-Appellants.


Appeal from the United States District Court
for the Central District of Illinois.
No. 99-1214--Joe Billy McDade, Chief Judge.


Argued September 22, 2000--Decided November 21, 2000


 Before POSNER, MANION, and EVANS, Circuit Judges.

 EVANS, Circuit Judge. An old Chinese proverb holds that to chop a tree down quickly, spend twice the time sharpening your ax. The Check Brokerage Corporation did not follow the proverb's wisdom. Although it hoped to quickly win an Illinois suit under a bad check law, insufficient time was spent studying the nuances of subrogation law, and thus the corporation found itself on the receiving end of this suit alleging violations of the federal Fair Debt Collection Practices Act (FDCPA). Touch .

 This saga began on a day in June of 1999 when Craig Gearing wrote two small checks--one for $8.64 and the other for $18.85--at a convenience store called Ayerco. The checks bounced.

 A section of the Illinois Criminal Code provides civil liability for "deceptive practices," including the issuance of bad checks. The Illinois law, which imposes significant penalties on those who write bad checks, holds that after certain collection efforts come up dry, the payee of a bad check, or a person subrogated to the rights of the payee, may sue for the face value of the check, treble damages up to $1,500, and attorneys fees and court costs. 720 ILCS 5/17-1a. Check Brokerage, a debt collection agency, apparently saw the Illinois

law as a business opportunity so it entered into a contract with Ayerco to collect bad checks Ayerco received from its customers. But the contract could not be structured as a traditional debt collection agreement--pursuant to which Ayerco would assign the bad checks to Check Brokerage in return for a percentage of any recovery--because the rich damages available under the Illinois act are only recoverable by the payee of the bad check, or someone subrogated to the rights of the payee. So Check Brokerage attempted to structure its contract with Ayerco in such a way that it would become subrogated to Ayerco's rights: it agreed to purchase all bad checks received by Ayerco for their full face value. But Check Brokerage was no fool; to eliminate its risk, the contract said it could recourse bad checks back to Ayerco, in effect rescind the sale, after 60 days.

Gearing's two checks to Ayerco were returned with "Closed Account" notations. Pursuant to its contract, Check Brokerage purchased the two checks for their face value as written./1 After performing the collection efforts set out as a prerequisite to recovery under the Illinois act, Check Brokerage brought suit against Gearing, alleging that it was subrogated to Ayerco's rights./2 But Gearing didn't throw in the towel. He got a lawyer and brought this case against Check Brokerage (and its attorney Drew Erwin) pursuant to the FDCPA. The lawsuit alleged that Check Brokerage's assertion that it was Ayerco's subrogee was a false representation in violation of 15 U.S.C. sec. 1692e. The district court agreed and granted Gearing's motion for summary judgment. We apply de novo review to Check Brokerage's appeal. Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999).

Gearing's FDCPA claim turns on whether Check Brokerage was actually subrogated to Ayerco's claims against Gearing. "Subrogation is '[t]he substitution of one person in the place of another with reference to a lawful claim . . . so that he who is substituted succeeds to the rights of the other in relation to the . . . claim, and its rights, remedies, or securities.'" Employers Ins. of Wausau v. James McHugh Constr. Co., 144 F.3d 1097, 1105 (7th Cir. 1998) (quoting Black's Law Dictionary 1427 (6th ed. 1990)). Under Illinois law, a party claiming a right of subrogation must establish that he paid a claim or debt for which a third party is primarily liable and that he seeks to enforce a right against that third party possessed by the subrogor. American Nat'l Bank & Trust Co. v. Weyerhaeuser Co., 692 F.2d 455, 461 (7th Cir. 1982). In addition, the party claiming a right of subrogation must establish that he is not a

volunteer, but instead is under compulsion to satisfy the debt. In re Marriage of Milliken, 557 N.E.2d 591, 595 (Ill. App. Ct. 1990); Inland Real Estate Corp. v. Tower Constr. Co., 528 N.E.2d 421, 428 (Ill. App. Ct. 1988). In cases in which these elements are satisfied, the Illinois Supreme Court has instructed that the doctrine of subrogation should be applied "where it effectuates a just resolution of the rights of the parties, irrespective of whether the doctrine has previously been invoked in the particular situation." Dworak v. Tempel, 161 N.E.2d 258, 263 (Ill. 1959).

Translated into the language of this case, Gearing argues that the recourse provision in the Check Brokerage-Ayerco contract rendered Check Brokerage a mere volunteer with respect to its payment to Ayerco to cover Gearing's checks. Generally, a party's agreement fulfills the requirement for subrogation purposes that the would-be subrogee is not acting as a mere volunteer. But the structure of Check Brokerage's agreement with Ayerco does not permit the blind application of this principle. Although Check Brokerage purchased Gearing's bad checks from Ayerco, it was not required to eat the checks if its collection efforts were unsuccessful. Indeed, the recourse provision granted Check Brokerage the absolute right to cancel its purchase of the checks after 60 days. This escape hatch shows that Check Brokerage did not act under any sort of "compulsion." It was a mere volunteer, and its claims to the contrary are illusory./3

Check Brokerage essentially asks us to eviscerate the compulsion and nonvolunteer requirement. But it is a stranger to the transaction that formed the basis of Gearing's debt to Ayerco; it had no obligation to come to Ayerco's aid, for any "obligation" to Ayerco, given the escape clause, was really no "obligation" at all. In a situation like this, where Check Brokerage is in the business of purchasing claims, at no risk to itself, so it can act under the Illinois bad check law, the taboo on volunteers being disabled from acting as subrogees makes nothing but good sense. In our situation, American National Bank & Trust does not help Check Brokerage, so we hold the company to be a mere volunteer, not one truly subrogated to Ayerco's rights against Gearing.

Having concluded that Check Brokerage was not subrogated to Ayerco's rights, little further need be said. Check Brokerage's allegation in its state court complaint that it was "subrogated" to Ayerco's rights gave a false impression as to the legal status it enjoyed. The representation was, as the district court found, a false

representation in an attempt to collect the debt, in violation of 15 U.S.C. sec. 1692e(2) and (10). Section 1692e applies even when a false representation was unintentional. Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996). We therefore affirm the district court's liability finding and its damage award, $200 plus costs and attorneys fees.

AFFIRMED.


/1 The Check Brokerage-Ayerco contract actually provides that Check Brokerage must pay face value for checks returned "Insufficient Funds" their first time through the payor bank, but only 50 percent of face value for checks returned "Closed Account." Here, Check Brokerage for some reason paid face value for Gearing's checks even though they were returned "Closed Account."

/2 We have not been told how Check Brokerage's state court suit against Gearing was resolved.

/3 Check Brokerage makes much of the fact that it did not exercise its rights under the recourse provision in this case. This only proves our point: although Check Brokerage could have cancelled its purchase of the checks, it "volunteered" to ratify the sale by declining to exercise its right of recourse.