In the

# United States Court of Appeals
### For the Seventh Circuit

No. 10-1376

MICHAEL O'ROURKE, individually and
on behalf of a class,

*Plaintiff-Appellant,*

*v.*

PALISADES ACQUISITION XVI, LLC, and
PALISADES COLLECTION, LLC,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 00430—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED SEPTEMBER 30, 2010—DECIDED MARCH 17, 2011

Before FLAUM, MANION, and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* Michael O'Rourke had a large outstanding balance on his credit card. Over the years, the unpaid debt was sold to several debt collectors and finally to Palisades Acquisition XVI. It sought but failed to collect on the debt and eventually sued O'Rourke in state court. Attached to the complaint was an exhibit that

closely resembled a credit card statement listing the balance he owed and placing Palisades in the place of the issuer. O'Rourke sued in federal court claiming that the attachment violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("the Act"). Unlike most lawsuits under the Act, he claimed that the attachment was actionable because it was meant to mislead the state court judge. The district court granted summary judgment for Palisades and O'Rourke appeals. The Act regulates communications directed at the consumer; since it does not extend to communications that are allegedly meant to mislead the judge in a state court action, we affirm.

I.

In 2001, O'Rourke owed several thousand dollars on his Citibank credit card but, for reasons unknown, he never paid the bill. Over time, he mistakenly assumed that the debt was barred by the statute of limitations. Then one day he received a collection notice from a law firm representing the debt's new owner, Palisades. He ignored it. Several months later, he received a summons and complaint with some exhibits attached. One of the exhibits was a statement that looked like a credit card bill, complete with a statement closing date several months before the complaint was filed, and it listed Palisades as the issuing party. Despite looking authentic, it was not an actual copy of a credit card statement. And Palisades admits that it never sent the statement to O'Rourke before filing the suit.

O'Rourke eventually hired a lawyer, and on the day of trial, Palisades voluntarily dismissed the case. After Palisades dismissed its suit, O'Rourke sued it in federal court claiming that the exhibit violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. Unlike most cases filed under the Act, O'Rourke doesn't claim that the statement was materially deceptive to him or to the unsophisticated consumer. Instead, he claims that the statement is materially false, deceptive, and misleading to a state court judge, specifically one who is viewing it in the context of granting a default judgment.

O'Rourke frames his argument around the over-burdened court system in Cook County, Illinois, the problems inherent in the debt collection business, and Palisades's chicanery. He claims that in Cook County—where Palisades filed its complaint—there are over 100,000 contract-claim cases filed every year, where parties sue over bad debts. This massive volume of cases is divided between seven full-time judges, giving each over 14,000 of these cases a year, with most of them being resolved by default judgments. A judgment, of course, changes the nature of the obligation; the debt collector can now create a judgment lien on real estate, and enable other collection methods, including garnishing the debtor's wages.

Debt collectors who work on very thin profit margins rely on these default judgments for two reasons. The first is that it is too expensive to actually litigate the case, especially when the debt is relatively small and previous collection efforts have failed. So, when a party

actually defends against the suit, the debt collector simply dismisses the suit—Palisades did precisely this with O'Rourke. The second reason is that they cannot always establish the debt. Like the current mortgage problem that dominates the headlines, these debts are packaged from the original owner and sold to debt collectors in a portfolio; if the portfolio is large enough, sometimes it's split among several debt collectors. And sometimes, the debt is packaged again and sold to a second or third debt collector—Palisades was the fourth successive assignee of O'Rourke's debt. This poses difficulties for everyone. The packaging and re-packaging of the debt can keep the debt collector from ever being able to verify the original debt. It can also affect the debtor: as in this case, the same debt is sold to multiple parties with each attempting to collect on it, sometimes at the same time. Thus, with the costs of litigation and the difficulties establishing the debt, when a debt collector cannot get payment through phone calls and letters and it has to go to court, the debt collector will often rely on default judgments as the last resort.

In most cases when a defendant fails to appear and answer the allegations in a properly pleaded complaint, those allegations are deemed admitted and default judgment is entered for the plaintiff. But the Illinois Rules of Civil Procedure also provide that even in the event the defendant fails to appear and plead, "the court may in either case, require proof of the allegations of the pleadings upon which relief is sought." 735 ILCS 5/2-1301(d). Although it is unclear how often courts exercise their discretion and require proof of the allega-

tions in the complaint, it does happen. *E.g.*, *Universal Cas. Co. v. Lopez*, 876 N.E.2d 273, 278 (Ill. App. Ct. 2007); *Colonial Penn Ins. Co. v. Tachibana*, 369 N.E.2d 177, 179 (Ill. App. Ct. 1977).

Naturally, with the difficulties outlined above, debt collectors want to avoid having to prove their damages to the court, so they attempt to fully establish all the facts with the complaint and the exhibits. In Illinois, one way that a plaintiff can establish a debt is through the account-stated theory or method. Under that method, when a party receives a bill or account statement and does not object to it within a reasonable time, the bill or statement serves as evidence of both an agreement to pay and the account's accuracy. *Delta Consulting Grp, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1138 (7th Cir. 2009) (citing *W.E. Erickson, Constr., Inc. v. Congress-Kenilworth Corp.*, 477 N.E.2d 513, 520 (1985)).

With this understanding, the statement attached to the complaint in this case takes on an added significance. It explains why the statement would be dated for six months before the complaint was filed and why it was, in fact, never sent to O'Rourke: Palisades apparently wanted to give the judge the impression that O'Rourke had received the statement and never objected. Thus, a judge who examines the complaint and the attached statement trusting it to be authentic would believe that there is no reason to exercise his discretion and require additional proof of the debt.

While this reflects negatively on Palisades's debt-collection practices, the question is not whether this dubious

method is an acceptable means of practicing law. Nor is the question whether the attached statement would have misled the unsophisticated consumer. Rather, the question O'Rourke presents is whether this statement, which O'Rourke alleges was meant to deceive the state court judge, is actionable under the Act. No other question was raised on appeal and no cross-appeal was filed, so we are limiting our analysis to what the parties have argued.[1]

## II.

We review de novo the district court's granting of summary judgment. *Ruth v. Triumph P'ships*, 577 F.3d 790, 795 (7th Cir. 2009). And we may affirm on any ground that appears in the record. *Bivens v. Trent*, 591 F.3d 555, 559 (7th Cir. 2010).

On appeal, O'Rourke continues to claim that the exhibit is materially false and would mislead the Cook County judge handling his case; thus, it violates § 1692e. That

---

[1] Nothing in the opinion states or should be read to address whether the Act applies to the entire judicial process. That question was left open in *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007), where we observed, without holding, that the Act's protections may not stretch into formal legal pleadings. *Id.* at 473. This case does not force us to revisit the question and answer whether it does. Instead, this opinion addresses the question presented: whether the Act covers filings that are meant to deceive a state court judge.

section is broadly written and prohibits the use of "any false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It then has a non-exhaustive list of conduct that violates the Act. O'Rourke specifically alleges that the misleading credit card statement violates § 1692e(2)(A) and (10). The first subsection prohibits the false representation of "the character, amount, or legal status of any debt." The second prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." Nothing in those subsections or in § 1692e states that the Act applies to statements made to judges, but at the same time, the Act's language is not specifically limited to statements directed at consumers.

Yet when read in light of the Act's purpose and numerous provisions, the prohibitions are clearly limited to communications directed to the consumer and do not apply to state judges. The Act is meant "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To accomplish this purpose, § 1692e broadly prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e. Many of the specific instances of conduct that violate this Section are protections for consumers. They keep consumers from being intimidated or tricked by debt collectors.[2] With

---

[2] *E.g.,* 15 U.S.C. § 1692e(2); *id.* § 1692e(4); *id.* § 1692e(5); *id.* § 1692e(10) (using "false representations and deceptive means to

(continued...)

this focus on the consumer, we have noted that "[t]he purpose of the Fair Debt Collection Practices Act is to protect consumers." *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 627 (7th Cir. 2009). And its provisions revolve around its purpose: "The statute is designed to provide information that helps consumers to choose intelligently." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009). Naturally we have used that understanding of the Act to interpret § 1692e, holding that to be actionable a misleading statement must have the ability to influence a *consumer's* decision. *Hahn*, 557 F.3d at 758 ("A statement cannot mislead unless it is material, so a false but non-material statement is not actionable."); *accord Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009).

---

[2] (...continued)

collect or attempt to collect a debt or information about a consumer"); *id.* § 1692e(11) (prohibiting debt collectors from failing to "disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt"); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (noting "[t]he FDCPA *establishes certain rights for consumers* whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors *advise the consumers* whose debts they seek to collect of specified rights."(quotation omitted) (emphasis added)); Christian Stueben, *Judge or Jury? Determining Deception or Misrepresentation Under Fair Debt Collection Practices Act*, 78 Fordham L. Rev. 3107, 3112-14 (2010) (outlining how the purpose of the Act is to protect consumers).

Our cases focus on the consumer, and we have rejected attempts to stretch the Act beyond its text and purpose. *See Tinsley v. Integrity Financial Partners, Inc.*, ___ F.3d ___, No. 10-2045, 2011 WL 477486 (7th Cir. Feb. 11, 2011). In *Tinsley*, when the debtor was contacted about a debt, he found an attorney, who wrote a letter to the debt collector stating that Tinsley had no assets and asking that all future communications be sent to the attorney. The debt collector complied and sent the next letter to the attorney. Tinsley then sued. His argument was premised on the fact that the Act prevents any further communication once a "consumer" maintains that he refuses to pay the debt. 15 U.S.C. § 1692c(c). Tinsley argued that the additional communications sent to his attorney—at his direction—violated the Act. He claimed that under the Act his attorney should be treated the same as a consumer. In rejecting this argument, we held that such an interplay between the subsections of the Act rendered it "gibberish," and called it an "implausible understanding" of the Act. *Id.* at 4-5. Unequivocally we held that under § 1692c, a lawyer representing a debtor is not a consumer.

Coming back to the question on appeal of whether the Act covers false statements made to judges, we turn to the Act's language. Section 1692e states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The text says nothing of to whom the representation has to be made for it to be actionable. Although the section's language has no specific limits, it cannot be so open-ended as to include, for example, a misleading

letter sent to the wrong address. *See David v. FMS Services*, 475 F. Supp.2d 447, 448 (S.D.N.Y. 2007). There must be a limiting principle.

The concurrence disagrees. First, it believes we should resolve this case with reference to the unsophisticated consumer standard, because at least in the district court below O'Rourke claimed that Palisades intended to deceive and mislead the court and the debtor; thus, even if the document wasn't created with him in mind, he was an indirect recipient. *Post* at 24. Second, it believes that communications meant to deceive judges fall under the Act, because § 1692e does not exclude any "class of persons" from the Act's protection. *Id.* at 23. The concurrence reasons that state courts are a "medium through which debt collection information is conveyed to consumers," *id.* at 24, and since state court judges can play "an extremely consequential role in the debt collection process," filings meant to deceive the judge should also be covered under the Act. *Id.* But even under the concurrence's position there would be classes of persons excluded from the Act's protections. Instead of focusing on the "consumer," courts would have to determine whether the person plays an inconsequential, a consequential, or "an extremely consequential role" in the process.

And that is unnecessary. The Act does not extend its protection beyond the consumer; there is no reference to anyone else in the process who may have a consequential, let alone extremely consequential role in the debt-collection process. Instead of relying on the concurrence's reasoning, the Act's purpose and focus provide

a clear limiting principle. *See* Norman J. Singer, 2B *Sutherland Statutory Construction*, § 54:5 (7th ed. 2008); *Gomez v. United States*, 490 U.S. 858, 864 (1989) (noting the Act should be read in light of its purpose). The Act is meant to protect consumers. *Muha*, 558 F.3d at 627. A consumer is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The definition applies to every subsection of the Act.

As a general matter, the Act and its protections do not extend to third parties. Although courts have extended the Act's prohibitions to some statements made to a consumer's attorney, *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773-75 (7th Cir. 2007), and to others who can be said to stand in the consumer's shoes, *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 650 (6th Cir. 1997) (en banc) (holding that executrix could sue because the Act applies to anyone who "stand[s] in the shoes of the debtor [with] the same authority as the debtor to open and read the letters of the debtor"), none has extended the Act to persons who do not have a special relationship with the consumer. In fact, the Eighth Circuit rejected an argument that the Act applied to representations that were not directed to the consumer: "The weight of authority applying section 1692e does so in the context of a debt collector making a false, deceptive, or misleading representation *to the plaintiff*." *Volden v. Innovative Financial Systems, Inc.*, 440 F.3d 947, 954 (8th Cir. 2006) (emphasis in the original) (the false statements at issue were not made to the consumer but between a check guarantee company and a returned-check processor). Thus, the Act is limited to protecting consumers

and those who have a special relationship with the con-
sumer—such that the Act is still protecting the con-
sumer—from statements that would mislead these con-
sumers. The Act is not similarly interested in pro-
tecting third parties. *Id.*; *see also Guerrero v. RJM Acquisi-
tions, LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (noting "Con-
gress did not view attorneys as susceptible to the abuses
that spurred the need for the legislation").

By drawing the line at communications directed at
consumers—"any natural person obligated or allegedly
obligated to pay any debt"—and those who stand in
their shoes, the Act fits its purpose: protecting consum-
ers. This gives consumers the full breadth of protection
that the Act permits and keeps us from reading into the
Act whatever implausible ends O'Rourke's lawyers can
conjure up. This also avoids the arbitrary "class designa-
tion" of whether the third party has "an extremely conse-
quential role in the debt collection process." And it
keeps us safe from the practical difficulty of parsing
claims about whether a communication directed at a
third party is actionable.[3] Thus, we read the Act's

---

[3] For example, if we accept O'Rourke's argument, we would
stretch an Act that is meant to protect the "unsophisticated
consumer" and place its protections on a judge, a judge who
has been to law school, who is likely an accomplished
attorney before ascending to the bench, and who is presumed
knowledgeable of the law due to his position on the bench—in
other words, a sophisticated individual. And just as we have
crafted standards for the "unsophisticated consumer" and the
(continued...)

protections as extending to consumers and those who stand in the consumer's shoes and no others.

The question then becomes whether judges stand in the shoes of the consumer, such that the Act's protections should be read to extend to them. Judges do not have a special relationship with consumers. They stand as impartial decision-makers in the discharge of their office. 28 U.S.C. § 453; 705 ILCS 35/2. They are neither a consumer's advocate nor his adversary; their role is to ensure that the process is followed. They have no special relationship with the consumer; thus, the Act's protections do not extend to communications that could mislead them.

## III.

Because nothing in the Act's text extends its protections to anyone but consumers and those who have a special relationship with the consumer, we hold that the Fair Debt Collection Practices Act does not extend to communications that would confuse or mislead a state court judge. Accordingly, the judgment of the district court is AFFIRMED.

---

[3] (...continued)
"competent lawyer," *Evory*, 505 F.3d at 773-75, we would then have to craft a test for whether a communication would confuse or mislead the sophisticated judge, and so on with each group of persons involved in the debt-collection process. The practical futility of judging such claims reinforces the holding of this case: The Act does not extend its protections to third parties who do not stand in the shoes of the consumer.

TINDER, *Circuit Judge*, concurring in the result. I agree with my colleagues' ultimate conclusion that summary judgment was properly granted against plaintiff-appellant O'Rourke and in favor of Palisdes. I write separately because I believe the holding of the majority opinion—that the "Fair Debt Collection Practices Act does not extend to communications that would confuse or mislead a state court judge," *ante* at 13—paints with a brush broader than necessary to resolve the issues presented here and in doing so potentially creates tension with the text of the Fair Debt Collection Practices Act (FDCPA or "the Act") and the case law of our sister circuits. If the question before us is "whether the Act covers filings that are meant to deceive a state court judge," *ante* at 6 n.1; *see also id.* at 6, 9, 13, I think the answer should be that even assuming it does, O'Rourke's claim fails.

As the majority explains, O'Rourke built his case on a document that was attached to the complaint in a collection suit filed against him in a Cook County, Illinois, court. O'Rourke argued in the district court below that the document was misleading under the Act both to him as a consumer and to the Cook County judge who would have decided his case if it had not been dismissed. In this court, he confines his argument to the deceptive effect the document could have had on the judge. I mention this narrowing strategy because, in my view, O'Rourke failed to produce evidence that the document was false, misleading or deceptive to either a consumer *or* a judge. I think we can avoid deciding the more difficult question of whether a false statement made to a

judge is proscribed by the Act by affirming the district court's assessment that O'Rourke's claim lacks sufficient evidentiary support.

I.

O'Rourke weaves allegations that the document at issue was misleading and deceptive into a broader narrative that it was patently false. His conflation of claims is not analytically problematic; we have recognized the overlapping nature of FDCPA claims relating to the false, misleading, and deceptive nature of documents. In *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009), we linked false to misleading, observing, "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense." *See also Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 627 (7th Cir. 2009) (quoting *Wahl* for this proposition); *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 758 (7th Cir. 2009) (same); *cf. Evory v. RJM Acquisitions Funding, L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007) (holding that statements that mislead or deceive the "competent lawyer" may also violate the FDCPA). We have likewise noted that "'[m]isleading' is similar to 'deceptive,' except that it can be innocent; one intends to deceive, but one can mislead through inadvertence." *Evory*, 505 F.3d at 775. The upshot is that to demonstrate actionable falsity in a debt collection communication, an FDCPA plaintiff must also demonstrate that unsophisticated consumers would be misled or deceived by the statement at issue. *See Ruth v. Triumph*

*P'ships*, 577 F.3d 790, 800 (7th Cir. 2009) ("[Plaintiff] could not prevail in the district court simply by proving that statements in the notice were false. Whether they were false or not, she had to prove that an unsophisticated consumer would be deceived or misled by them."); *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (explaining the "unsophisticated consumer" standard).

In some circumstances, we require FDCPA plaintiffs to produce extrinsic evidence to make this demonstration. As we explained in *Ruth*, plaintiffs who come forward with a document or statement that is clearly misleading or deceptive on its face are entitled to summary judgment on the basis of the document or statement alone. *See Ruth*, 577 F.3d at 801 (noting that there is no need for plaintiffs to "prove what is already clear"). But when the document or statement at issue is "not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer," *id.* at 800, "plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive," *id.*

O'Rourke has not produced anything showing that he or anyone else was misled, deceived, or otherwise duped by the document at issue. That would not pose an obstacle to his recovery if the document was on its face clearly misleading or deceptive. *See id.* at 801. But in my view the document is not. O'Rourke's theory is that the document is misleading because it appears as though

it was sent to him, like a credit card statement, long before the suit against him was initiated, when in fact, it was not. O'Rourke points to the document's display of his address and a "Statement Closing Date" of July 5, 2007. The address and date might lead an unsophisticated consumer to believe that the document had been sent to him previously, but maybe not. "Statement Closing Date" is not the equivalent of "Statement Sent On," "Statement Prepared On," a post office cancellation mark, or a "sent" stamp. "Our past cases indicate that summary judgment may be avoided by showing that the letter, on its face, will 'confuse a substantial number of recipients.'" *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007) (quoting *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 575 (7th Cir. 2004)). I do not doubt that it is possible that the document could lead someone to believe it was designed to appear as though it was sent to O'Rourke around July 5, 2007. But that is not the only reasonable conclusion one could reach on the face of the document, so more needed to be shown before summary judgment for O'Rourke would have been warranted. *See Ruth*, 577 F.3d at 801.

Given the document's potential to cause confusion, it cannot be considered so clearly compliant with the FDCPA on its face that summary judgment for Palisades can be granted on that basis alone. *See id.* at 800 (discussing cases in which we granted summary judgment for debt collectors because the challenged documents or statements "plainly, on their face, [were] not misleading or deceptive"); *see also Wahl*, 556 F.3d at 646; *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 841 (7th Cir.

2007). There is some traction to O'Rourke's claim that the document appears to have been sent to him in July 2007, and there may be even more traction to his contention that the document looks so much like a credit card statement that consumers might conclude that it was one. *Cf. Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 613 (6th Cir. 2009) (noting that a similar document attached to a state court complaint gave rise to a "genuine issue of material fact as to whether this document would mislead the least sophisticated consumer"). A grant of summary judgment for Palisades on the face of the document alone would thus be improper. *See Ruth*, 577 F.3d at 800.

I am left to conclude that the document at issue falls somewhere in the middle of these extremes: it is not so misleading on its face as to warrant immediate summary judgment for O'Rourke, but it is not so clear (and *not* misleading) on its face as to warrant immediate summary judgment for Palisades. I acknowledge that this document has a "potential for deception of the unsophisticated," *Evory*, 505 F.3d at 776, but because this court is not an "expert[ ] in the knowledge and understanding of unsophisticated consumers facing demands by debt collectors," *id.*, O'Rourke "may prevail only by producing extrinsic evidence . . . to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive," *Ruth*, 577 F.3d at 800.

O'Rourke attempted to meet this burden by submitting a purported expert report from an attorney who had experience with debt collection suits in Cook County

Circuit Court. After reviewing fifty-eight cases brought by Palisades and thirty-seven collection cases brought by non-party debt collector Midland Funding, LLC, O'Rourke's proposed expert presented two opinions: "(1) In most cases brought by or on behalf of Debt Buyers, an *ex parte* default judgment results without a prove-up on damages. (2) Attaching a statement of account to the complaint creates the appearance that the document was sent to the debtor prior to the litigation which was not objected to giving rise to an Account Stated." The district court concluded that neither of the opinions was predicated on reliable methodology and excluded the report on that basis. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004) ("In determining whether evidence is reliable, the district judge must determine whether . . . the methodology underlying the expert's conclusions is reliable." (quotation omitted)). This was plainly not an abuse of discretion, *see Myers v. Ill. Cent. R.R.*, 629 F.3d 639, 641 (7th Cir. 2010) ("[W]e review for an abuse of discretion the district court's decision to exclude the expert testimony."), for the proposed expert did not employ any sort of accepted evaluative framework, such as statistics, a control group, or even a true random sample.

O'Rourke did not bring any other evidence to the table. He therefore was unable to create a genuine issue of material fact for trial. *See Williams*, 505 F.3d at 678. He tried to get around his failure of proof by arguing that the document was primarily directed at the court. Therefore, he contended, "a survey of unsophisticated consumers makes no sense." Appellant's Br. 20, 28-29.

It is true that we have applied a different standard—that of the "competent lawyer"—when assessing FDCPA claims brought in response to statements made to lawyers rather than consumers. *See Evory*, 505 F.3d at 775. We have not identified a standard for judges, though we have hinted that if one exists it would likewise be higher than that applied to the unsophisticated consumer. *See Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007) ("Whatever shorthand appeared in the complaint—the payments system through which credit-card slips flow is complex, and even many lawyers don't grasp all of its details—was harmless rather than an effort to lead anyone astray. It was the judge, not [the debtor], who had to be able to determine to whom the debt was owed . . . ."); *see also Evory*, 505 F.3d at 775 ("A sophisticated person is less likely to be either deceived or misled than an unsophisticated one."). If the FDCPA indeed supports O'Rourke's theory of judicial deception, we would seem to be confronted with the crucial question of which standard, unsophisticated consumer, competent lawyer, or something else, should apply.

The events here do not require us to even begin down that rabbit hole, however.[1] It would be unreasonable to

---

[1] The majority cautions that consideration of whether materials submitted to judges are violative of the FDCPA could require the crafting of a "judge test," and perhaps others, *see ante* at 12 & n.3, leading a parade of horribles down the road to "practical futility," *id.* at 12 n.3. At least with respect to judges, I respect-
(continued...)

hold judges, like competent lawyers, to a standard lower than that to which we hold the "uninformed, naive, or trusting," *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994), unsophisticated consumer who occupies the "lowest quartile . . . of consumer competence," *Evory*, 505 F.3d at 774. The way I see it, then, the unsophisticated consumer standard effectively serves as a floor beneath which our analysis will in any event have no cause to descend. And that is what dooms O'Rourke here, for he has not produced evidence showing that even an unsophisticated consumer would be misled or deceived by the statement. If he cannot make that minimal showing, he is necessarily unable to demonstrate that individuals held to a higher standard of competence would be misled or deceived. The lack of evidentiary proof stymies O'Rourke no matter how the document's audience—and the standard to which it is held— is characterized. So even though there is a case to be made that the statement equally targeted the court and O'Rourke, *see Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1032 (9th Cir. 2010) (holding that a consumer was the audience of a complaint that was served on him); *see also* 735 Ill. Comp. Stat. 5/2-201, 5/2-203 (requiring service of state court complaint and summons on defendants); Appellee's Br. 3 ("[T]he purpose of the statement was to provide information to a debtor served with a col-

---

[1] (...continued)
fully disagree. Federal courts are well-suited to determine whether statements submitted to judges in collection cases are likely to mislead or deceive them.

lection complaint."), O'Rourke's retreat from that argument in this forum is of no matter.

## II.

As the preceding section demonstrates, this case can be resolved without expanding our extensive FDCPA precedent. I respectfully submit that the categorical exclusion of documents provided to state court judges from the purview of the FDCPA goes beyond what is necessary to find that summary judgment was properly granted here.

My colleagues correctly emphasize that the purpose of the FDCPA is to protect consumers. *See ante* at 7-9. I am not convinced, though, that the Act necessarily should be read to exclude misleading documents submitted to a court from its proscriptions.

By its terms, the FDCPA aims "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). This language is quite expansive; the Sixth Circuit has characterized the Act as "extraordinarily broad." *Hartman*, 569 F.3d at 611 (quoting *Barany-Snyder v. Weiner*, 539 F.3d 327, 332-33 (6th Cir. 2008)). The provision under which O'Rourke proceeds, 15 U.S.C. § 1692e, is similarly unbounded in its proscription of false or misleading representations: "A debt collector may not use any false, deceptive, or misleading representation

or means in connection with the collection of any debt." In my view, the use of the judicial process is unquestionably a means by which debts are collected, and I struggle to find in the language of the statute any reason why statements or representations made during the use of the judicial process should be categorically excluded from its ambit. Indeed, we recognized in *Evory* that §§ 1692d-1692f "do not designate any class of persons, such as lawyers, who can be abused, misled, etc., by debt collectors with impunity." *Evory*, 505 F.3d at 773. Holding that state court judges are necessarily outside the scope of the FDCPA would seem to create such a "class of persons."

While we deferred for another day the "decision whether § 1692e covers the process of litigation" in *Beler*, 480 F.3d at 473, in two earlier cases, *Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000), and *Veach v. Sheeks*, 316 F.3d 690 (7th Cir. 2003), we treated the allegations of a state court pleading (a civil complaint, and, in *Veach*, an attachment to it) as being within the ambit of the FDCPA without any hesitation. Indeed, in *Gearing* we concluded that a debt collector who falsely averred in a state court complaint that it was subrogated to another party "gave a false impression as to the legal status it enjoyed," and held that the false representation was violative of 15 U.S.C. § 1692e(2) and (10), the very subparts of § 1692e that O'Rourke alleges are implicated here. *Gearing*, 233 F.3d at 472. Similarly, in *Veach*, we used the unsophisticated consumer standard to conclude that a debt collector violated 15 U.S.C. § 1692e when it stated in a small claims court complaint and

attached documentation that a debtor owed a sum that included yet-unawarded treble damages, court costs, and attorneys' fees. *See Veach*, 316 F.3d at 692-93.

Of course, it does not appear that the parties in *Gearing* or *Veach* disputed the applicability of the Act to the allegations in documents filed in state court, so I don't contend that the majority opinion in our case is in direct conflict with these decisions; they will simply remain as anomalous results. *See Hughes v. United Air Lines, Inc.*, ___ F.3d ___, No. 10-1129, 2011 WL 383046, at *3 (7th Cir. Feb. 8, 2011). And the majority appropriately distinguishes *Evory*, in which we held that statements debt collectors make to consumers' attorneys are actionable under the FDCPA, *see Evory*, 505 F.3d at 774-75: it notes that attorneys effectively "stand in the consumer's shoes," *ante* at 11. It is true that judges do not stand in consumers' shoes, but aren't state courts a medium through which debt collection information is conveyed to consumers? *See* 15 U.S.C. § 1692a(2). Again, recall that O'Rourke received the document at issue only after it was provided to the court. And it came to him as a part of the packet of materials associated with a lawsuit that could result in a judgment against him.

I respectfully suggest that the language of the Act may be expansive enough to prohibit misleading submissions to a court, that is, to a court which can impose liability on the debtor. *Cf. Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649 (6th Cir. 1994) (en banc) ("Unlike other sections of the act where relief is limited to 'consumers,' under § 1692e a debt collection practice need not offend

the alleged debtor before there is a violation of the provision."). *Contra ante* at 11-12 ("[T]he Act is limited to protecting consumers and those who have a special relationship with the consumer—such that the Act is still protecting the consumer—from statements that would mislead these consumers."). A judge can play an extremely consequential role in the debt collection process.[2] This supports the notion that an effort to induce a judge to enter a judgment based on a false, misleading, or deceptive document ought to be considered an abusive practice under the Act.

Applying 15 U.S.C. § 1692e in this way should not "stretch" it "beyond its text and purpose." *Ante* at 9. While we recently emphasized in *Tinsley v. Integrity Fin. Partners, Inc.*, ___ F.3d ___, No. 10-2045, 2011 WL 477486 (7th Cir. Feb. 11, 2011), the conceptual, definitional, and practical importance of distinguishing "consumers"

---

[2]   This is not to say I contend, as the majority suggests, *ante* at 10, that the extent of an individual's role in the debt collection process should be used to determine whether the FDCPA's scope is wide enough to encompass statements directed primarily at that individual. My point is that courts, unlike third parties who have contracts with debt collectors that are unrelated to the debt collection process, *see Volden v. Innovative Fin. Sys., Inc.*, 440 F.3d 947, 950, 954 (8th Cir. 2006), are unquestionably "connect[ed]" to debt collectors' collection efforts, 15 U.S.C. § 1692e. That such a statement is made to a court holding the power to enter a judgment adverse to the consumer also bears on whether such a statement would be material. *See Hahn*, 557 F.3d at 757-58.

from "attorneys" and other third parties, we did so in the context of 15 U.S.C. § 1692c, which regulates debt collectors' communications with "consumers," period. Section 1692e is not so limited. Indeed, the Sixth Circuit has noted, en banc, that § 1692c "appears to be the most restrictive of the FDCPA's provisions. The other provisions [including § 1692e, the provision at issue here], are not limited to 'consumers' and thus are broader than § 1692c." *Wright*, 22 F.3d at 649 n.1. Courts and judges need not be equated with "consumers" to be encompassed within the language of § 1692e, which generally prohibits debt collectors from using "any false, deceptive, or misleading representation[s] or means in connection with the collection of any debt."

Restricting our understanding of the FDCPA to exclude communications to judges also has the potential to put us at loggerheads with some of our sister circuits. In a case involving a questionable statement virtually identical to the one at issue here, *see Hartman*, 569 F.3d at 610, 612, the Sixth Circuit reversed a district court's grant of summary judgment in favor of the defendants, concluding that the plaintiffs had raised a genuine issue of material fact as to whether the statement was misleading or deceptive to the least sophisticated consumer. *Id.* at 613. The Ninth Circuit, which does not go as far as we do in recognizing an FDCPA cause of action for statements sent to lawyers, *see Guerrero v. RJM Acquisitions, LLC*, 499 F.3d 926, 935-36 (9th Cir. 2007), nonetheless expressly has held that "a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of

§§ 1692e and 1692f," *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031-32 (9th Cir. 2010). I recognize that we are not bound by the holdings of other circuits, *United States v. Clark*, 538 F.3d 803, 812 (7th Cir. 2008), but we frequently look to them as informative and persuasive authority. I also find it instructive that no other circuit, even those unwilling to interpret the FDCPA to reach statements made to lawyers, *contra Evory*, 505 F.3d at 775, has concluded that the FDCPA can never reach statements made to courts or judges.

Answering the question of whether § 1692e covers the papers filed in a state court collection suit is unnecessary here, just as it was in *Beler*, 480 F.3d at 473. Even assuming it does, judgment was properly entered against O'Rourke. I therefore concur in the result.