TINDER, Circuit Judge,
concurring in the result.
I agree with my colleagues’ ultimate conclusion that summary judgment was properly granted against plaintiff-appellant O’Rourke and in favor of Palisades. I write separately because I believe the holding of the majority opinion — that the “Fair Debt Collection Practices Act does not extend to communications that would confuse or mislead a state court judge,” ante at 944 — paints with a brush broader than necessary to resolve the issues presented here and in doing so potentially creates tension with the text of the Fair Debt Collection Practices Act (FDCPA or “the Act”) and the case law of our sister circuits. If the question before us is “whether the Act covers filings that are meant to deceive a state court judge,” ante at 941 n.l; see also id. at 940-41, 942, 944, I think the answer should be that even assuming it does, O’Rourke’s claim fails.
As the majority explains, O’Rourke built his case on a document that was attached to the complaint in a collection suit filed against him in a Cook County, Illinois, court. O’Rourke argued in the district court below that the document was misleading under the Act both to him as a consumer and to the Cook County judge who would have decided his case if it had not been dismissed. In this court, he confines his argument to the deceptive effect the document could have had on the judge. I mention this narrowing strategy because, in my view, O’Rourke failed to produce evidence that the document was false, misleading or deceptive to either a consumer or a judge. I think we can avoid deciding the more difficult question of whether a false statement made to a judge is proscribed by the Act by affirming the district court’s assessment that O’Rourke’s claim lacks sufficient evidentiary support.
I.
O’Rourke weaves allegations that the document at issue was misleading and deceptive into a broader narrative that it was patently false. His conflation of claims is not analytically problematic; we have rec *945 ognized the overlapping nature of FDCPA claims relating to the false, misleading, and deceptive nature of documents. In Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 645-46 (7th Cir.2009), we linked false to misleading, observing, “If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA — even if it is false in some technical sense.” See also Muha v. Encore Receivable Mgmt., Inc., 558 F.3d 623, 627 (7th Cir.2009) (quoting Wahl for this proposition); Hahn v. Triumph P’ships LLC, 557 F.3d 755, 758 (7th Cir.2009) (same); cf. Evory v. RJM Acquisitions Funding, L.L.C., 505 F.3d 769, 775 (7th Cir.2007) (holding that statements that mislead or deceive the “competent lawyer” may also violate the FDCPA). We have likewise noted that “ ‘[m]isleading’ is similar to ‘deceptive,’ except that it can be innocent; one intends to deceive, but one can mislead through inadvertence.” Evory, 505 F.3d at 775. The upshot is that to demonstrate actionable falsity in a debt collection communication, an FDCPA plaintiff must also demonstrate that unsophisticated consumers would be misled or deceived by the statement at issue. See Ruth v. Triumph P’ships, 577 F.3d 790, 800 (7th Cir.2009) (“[Plaintiff] could not prevail in the district court simply by proving that statements in the notice were false. Whether they were false or not, she had to prove that an unsophisticated consumer would be deceived or misled by them.”); Durkin v. Equifax Check Servs., Inc., 406 F.3d 410, 414 (7th Cir.2005) (explaining the “unsophisticated consumer” standard).
In some circumstances, we require FDCPA plaintiffs to produce extrinsic evidence to make this demonstration. As we explained in Ruth, plaintiffs who come forward with a document or statement that is clearly misleading or deceptive on its face are entitled to summary judgment on the basis of the document or statement alone. See Ruth, 577 F.3d at 801 (noting that there is no need for plaintiffs to “prove what is already clear”). But when the document or statement at issue is “not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer,” id. at 800, “plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive,” id.
O’Rourke has not produced anything showing that he or anyone else was misled, deceived, or otherwise duped by the document at issue. That would not pose an obstacle to his recovery if the document was on its face clearly misleading or deceptive. See id. at 801. But in my view' the document is not. O’Rourke’s theory is that the document is misleading because it appears as though it was sent to him, like a credit card statement, long before the suit against him was initiated, when in fact, it was not. O’Rourke points to the document’s display of his address and a “Statement Closing Date” of July 5, 2007. The address and date might lead an unsophisticated consumer to believe that the document had been sent to him previously, but maybe not. “Statement Closing Date” is not the equivalent of “Statement Sent On,” “Statement Prepared On,” a post office cancellation mark, or a “sent” stamp. “Our past cases indicate that summary judgment may be avoided by showing that the letter, on its face, will ‘confuse a substantial number of recipients.’ ” Williams v. OSI Educ. Servs., Inc., 505 F.3d 675, 678 (7th Cir.2007) (quoting Taylor v. Cavalry Inv., L.L.C., 365 F.3d 572, 575 (7th Cir.2004)). I do not doubt that it is possible that the document could lead someone to believe it was designed to appear as though it was sent to O’Rourke around July 5, 2007. But that is not the only *946 reasonable conclusion one could reach on the face of the document, so more needed to be shown before summary judgment for O’Rourke would have been warranted. See Ruth, 577 F.3d at 801.
Given the document’s potential to cause confusion, it cannot be considered so clearly compliant with the FDCPA on its face that summary judgment for Palisades can be granted on that basis alone. See id. at 800 (discussing cases in which we granted summary judgment for debt collectors because the challenged documents or statements “plainly, on their face, [were] not misleading or deceptive”); see also Wahl, 556 F.3d at 646; Barnes v. Advanced Call Ctr. Techs., LLC, 493 F.3d 838, 841 (7th Cir.2007). There is some traction to O’Rourke’s claim that the document appears to have been sent to him in July 2007, and there may be even more traction to his contention that the document looks so much like a credit card statement that consumers might conclude that it was one. Cf. Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 613 (6th Cir.2009) (noting that a similar document attached to a state court complaint gave rise to a “genuine issue of material fact as to whether this document would mislead the least sophisticated consumer”). A grant of summary judgment for Palisades on the face of the document alone would thus be improper. See Ruth, 577 F.3d at 800.
I am left to conclude that the document at issue falls somewhere in the middle of these extremes: it is not so misleading on its face as to warrant immediate summary judgment for O’Rourke, but it is not so clear (and not misleading) on its face as to warrant immediate summary judgment for Palisades. I acknowledge that this document has a “potential for deception of the unsophisticated,” Evory, 505 F.3d at 776, but because this court is not an “expertf ] in the knowledge and understanding of unsophisticated consumers facing demands by debt collectors,” id., O’Rourke “may prevail only by producing extrinsic evidence ... to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive,” Ruth, 577 F.3d at 800.
O’Rourke attempted to meet this burden by submitting a purported expert report from an attorney who had experience with debt collection suits in Cook County Circuit Court. After reviewing fifty-eight cases brought by Palisades and thirty-seven collection cases brought by non-party debt collector Midland Funding, LLC, O’Rourke’s proposed expert presented two opinions: “(1) In most cases brought by or on behalf of Debt Buyers, an ex parte default judgment results without a prove-up on damages. (2) Attaching a statement of account to the complaint creates the appearance that the document was sent to the debtor prior to the litigation which was not objected to giving rise to an Account Stated.” The district court concluded that neither of the opinions was predicated on reliable methodology and excluded the report on that basis. See Ammons v. Aramark Uniform Servs., Inc., 368 F.3d 809, 816 (7th Cir.2004) (“In determining whether evidence is reliable, the district judge must determine whether ... the methodology underlying the expert’s conclusions is reliable.” (quotation omitted)). This was plainly not an abuse of discretion, see Myers v. Ill. Cent. R.R., 629 F.3d 639, 641 (7th Cir.2010) (“[W]e review for an abuse of discretion the district court’s decision to exclude the expert testimony.”), for the proposed expert did not employ any sort of accepted evaluative framework, such as statistics, a control group, or even a true random sample.
O’Rourke did not bring any other evidence to the table. He therefore was unable to create a genuine issue of material *947 fact for trial. See Williams, 505 F.3d at 678. He tried to get around his failure of proof by arguing that the document was primarily directed at the court. Therefore, he contended, “a survey of unsophisticated consumers makes no sense.” Appellant’s Br. 20, 28-29.
It is true that we have applied a different standard — that of the “competent lawyer” — when assessing FDCPA claims brought in response to statements made to lawyers rather than consumers. See Evory, 505 F.3d at 775. We have not identified a standard for judges, though we have hinted that if one exists it would likewise be higher than that applied to the unsophisticated consumer. See Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d 470, 473 (7th Cir.2007) (“Whatever shorthand appeared in the complaint — the payments system through which credit-card slips flow is complex, and even many lawyers don’t grasp all of its details — was harmless rather than an effort to lead anyone astray. It was the judge, not [the debtor], who had to be able to determine to whom the debt was owed.... ”); see also Evory, 505 F.3d at 775 (“A sophisticated person is less likely to be either deceived or misled than an unsophisticated one.”). If the FDCPA indeed supports O’Rourke’s theory of judicial deception, we would seem to be confronted with the crucial question of which standard, unsophisticated consumer, competent lawyer, or something else, should apply.
The events here do not require us to even begin down that rabbit hole, however.[1] It would be unreasonable to hold judges, like competent lawyers, to a standard lower than that to which we hold the “uninformed, naive, or trusting,” Gammon v. GC Servs. Ltd. P’ship, 27 F.3d 1254, 1257 (7th Cir.1994), unsophisticated consumer who occupies the “lowest quartile ... of consumer competence,” Evory, 505 F.3d at 774. The way I see it, then, the unsophisticated consumer standard effectively serves as a floor beneath which our analysis will in any event have no cause to descend. And that is what dooms O’Rourke here, for he has not produced evidence showing that even an unsophisticated consumer would be misled or deceived by the statement. If he cannot make that minimal showing, he is necessarily unable to demonstrate that individuals held to a higher standard of competence would be misled or deceived. The lack of evidentiary proof stymies O’Rourke no matter how the document’s audience— and the standard to which it is held — is characterized. So even though there is a case to be made that the statement equally targeted the court and O’Rourke, see Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1032 (9th Cir.2010) (holding that a consumer was the audience of a complaint that was served on him); see also 735 Ill.Comp. Stat. 5/2-201, 5/2-203 (requiring service of state court complaint and summons on defendants); Appellee’s Br. 3 (“[T]he purpose of the statement was to provide information to a debtor served with a collection complaint.”), O’Rourke’s retreat from that argument in this forum is of no matter.
II.
As the preceding section demonstrates, this case can be resolved without expand *948 ing our extensive FDCPA precedent. I respectfully submit that the categorical exclusion of documents provided to state court judges from the purview of the FDCPA goes beyond what is necessary to find that summary judgment was properly granted here.
My colleagues correctly emphasize that the purpose of the FDCPA is to protect consumers. See ante at 941-42. I am not convinced, though, that the Act necessarily should be read to exclude misleading documents submitted to a court from its proscriptions.
By its terms, the FDCPA aims “to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.” 15 U.S.C. § 1692(e). This language is quite expansive; the Sixth Circuit has characterized the Act as “extraordinarily broad.” Hartman, 569 F.3d at 611 (quoting Barany-Snyder v. Weiner, 539 F.3d 327, 332-33 (6th Cir.2008)). The provision under which O’Rourke proceeds, 15 U.S.C. § 1692e, is similarly unbounded in its proscription of false or misleading representations: “A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.” In my view, the use of the judicial process is unquestionably a means by which debts are collected, and I struggle to find in the language of the statute any reason why statements or representations made during the use of the judicial process should be categorically excluded from its ambit. Indeed, we recognized in Evory that §§ 1692d-1692f “do not designate any class of persons, such as lawyers, who can be abused, misled, etc., by debt collectors with impunity.” Evory, 505 F.3d at 773. Holding that state court judges are necessarily outside the scope of the FDCPA would seem to create such a “class of persons.”
While we deferred for another day the “decision whether § 1692e covers the process of litigation” in Beler, 480 F.3d at 473, in two earlier cases, Gearing v. Check Brokerage Corp., 233 F.3d 469 (7th Cir.2000), and Veach v. Sheeks, 316 F.3d 690 (7th Cir.2003), we treated the allegations of a state court pleading (a civil complaint, and, in Veach, an attachment to it) as being within the ambit of the FDCPA without any hesitation. Indeed, in Gearing we concluded that a debt collector who falsely averred in a state court complaint that it was subrogated to another party “gave a false impression as to the legal status it enjoyed,” and held that the false representation was violative of 15 U.S.C. § 1692e(2) and (10), the very subparts of § 1692e that O’Rourke alleges are implicated here. Gearing, 233 F.3d at 472. Similarly, in Veach, we used the unsophisticated consumer standard to conclude that a debt collector violated 15 U.S.C. § 1692e when it stated in a small claims court complaint and attached documentation that a debtor owed a sum that included yet-unawarded treble damages, court costs, and attorneys’ fees. See Veach, 316 F.3d at 692-93.
Of course, it does not appear that the parties in Gearing or Veach disputed the applicability of the Act to the allegations in documents filed in state court, so I don’t contend that the majority opinion in our case is in direct conflict with these decisions; they will simply remain as anomalous results. See Hughes v. United Air Lines, Inc., 634 F.3d 391, 394-95 (7th Cir.2011). And the majority appropriately distinguishes Evory, in which we held that statements debt collectors make to consumers’ attorneys are actionable under the FDCPA, see Evory, 505 F.3d at 774-75: it notes that attorneys effectively “stand in *949 the consumer’s shoes,” ante at 943. It is true that judges do not stand in consumers’ shoes, but aren’t state courts a medium through which debt collection information is conveyed to consumers?. See 15 U.S.C. § 1692a(2). Again, recall that O’Rourke received the document at issue only after it was provided to the court. And it came to him as a part of the packet of materials associated with a lawsuit that could result in a judgment against him.
I respectfully suggest that the language of the Act may be expansive enough to prohibit misleading submissions to a court, that is, to a court which can impose liability on the debtor. Cf. Wright v. Fin. Serv. of Norwalk, Inc., 22 F.3d 647, 649 (6th Cir.1994) (en banc) (“Unlike other sections of the act where relief is limited to ‘consumers,’ under § 1692e a debt collection practice need not offend the alleged debtor before there is a violation of the provision.”). Contra ante at 943 (“[T]he Act is limited to protecting consumers and those who have a special relationship with the consumer — such that the Act is still protecting the consumer — from statements that would mislead these consumers.”). A judge can play an extremely consequential role in the debt collection process.[2] This supports the notion that an effort to induce a judge to enter a judgment based on a false, misleading, or deceptive document ought to be considered an abusive practice under the Act.
Applying 15 U.S.C. § 1692e in this way should not “stretch” it “beyond its text and purpose.” Ante at 942. While we recently emphasized in Tinsley v. Integrity Fin. Partners, Inc., 634 F.3d 416 (7th Cir.2011), the conceptual, definitional, and practical importance of distinguishing “consumers” from “attorneys” and other third parties, we did so in the context of 15 U.S.C. § 1692c, which regulates debt collectors’ communications with “consumers,” period. Section 1692e is not so limited. Indeed, the Sixth Circuit has noted, en banc, that § 1692c “appears to be the most restrictive of the FDCPA’s provisions. The other provisions [including § 1692e, the provision at issue here], are not limited to ‘consumers’ and thus are broader than § 1692c.” Wright, 22 F.3d at 649 n. 1. Courts and judges need not be equated with “consumers” to be encompassed within the language of § 1692e, which generally prohibits debt collectors from using “any false, deceptive, or misleading representation[s] or means in connection with the collection of any debt.”
Restricting our understanding of the FDCPA to exclude communications to judges also has the potential to put us at loggerheads with some of our sister circuits. In a case involving a questionable statement virtually identical to the one at issue here, see Hartman, 569 F.3d at 610, 612, the Sixth Circuit reversed a district court’s grant of summary judgment in favor of the defendants, concluding that the plaintiffs had raised a genuine issue of material fact as to whether the statement was misleading or deceptive to the least sophisticated consumer. Id. at 613. The Ninth Circuit, which does not go as far as we do in recognizing an FDCPA cause of action for statements sent to lawyers, see *950 Guerrero v. RJM Acquisitions, LLC, 499 F.3d 926, 935-36 (9th Cir.2007), nonetheless expressly has held that “a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f,” Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1031-32 (9th Cir.2010). I recognize that we are not bound by the holdings of other circuits, United States v. Clark, 538 F.3d 803, 812 (7th Cir.2008), but we frequently look to them as informative and persuasive authority. I also find it instructive that no other circuit, even those unwilling to interpret the FDCPA to reach statements made to lawyers, contra Evory, 505 F.3d at 775, has concluded that the FDCPA can never reach statements made to courts or judges.
Answering the question of whether § 1692e covers the papers filed in a state court collection suit is unnecessary here, just as it was in Beler, 480 F.3d at 473. Even assuming it does, judgment was properly entered against O’Rourke. I therefore concur in the result.

. The majority cautions that consideration of whether materials submitted to judges are violative of the FDCPA could require the crafting of a "judge test,” and perhaps others, see ante at 943-44 & n.3, leading a parade of horribles down the road to “practical futility,” id. at 943-44 n.3. At least with respect to judges, I respect fully disagree. Federal courts are well-suited to determine whether statements submitted to judges in collection cases are likely to mislead or deceive them.

. This is not to say I contend, as the majority suggests, ante at 942-43, that the extent of an individual's role in the debt collection process should be used to determine whether the FDCPA's scope is wide enough to encompass statements directed primarily at that individual. My point is that courts, unlike third parties who have contracts with debt collectors that are unrelated to the debt collection process, see Volden v. Innovative Fin. Sys., Inc., 440 F.3d 947, 950, 954 (8th Cir.2006), are unquestionably "connect[ed]'' to debt collectors' collection efforts, 15 U.S.C. § 1692e. That such a statement is made to a court holding the power to enter a judgment adverse to the consumer also bears on whether such a statement would be material. See Hahn, 557 F.3d at 757-58.