In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2707

ELLA M. BELER,

*Plaintiff-Appellant,*

*v.*

BLATT, HASENMILLER, LEIBSKER & MOORE, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 05-3059—**Jeanne E. Scott**, *Judge.*

ARGUED JANUARY 3, 2007—DECIDED MARCH 7, 2007

Before EASTERBROOK, *Chief Judge*, and WOOD and
WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge.* This action under the
Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-
1692*o*, stems from litigation in state court. Ella Beler
bought products from JCPenney using a house-label credit
card. Credit was extended by General Electric Capital
Corporation through the auspices of Monogram Credit
Card Bank of Georgia. When Beler fell behind in repay-
ment, GE Capital filed a collection suit in Illinois. It was
represented by Blatt, Hasenmiller, Leibsker & Moore, LLC
(which we call "the Law Firm"). Beler's unpaid balance
was $731. A lot more than that has been run up since
in legal fees.

Beler admitted in open court on March 26, 2004, that she owed what GE Capital claimed, and judgment was entered accordingly. But Beler did not pay, appeal, or file a bankruptcy petition. Her inaction led the Law Firm to send a Citation to Discover Assets (see 735 ILCS 5/2-1402) to U.S. Bank in Springfield, Illinois, where Beler had a checking account whose balance exceeded what she owed on the judgment. The citation informed the Bank that assets exempt from execution under state or federal law should not be turned over. Having no idea which (if any) funds might be exempt, the Bank froze the account.

At this point Beler finally hired a lawyer, who asserted that the entire balance was exempt because all of her current income consisted of disability payments from the Social Security program. See 42 U.S.C. §407(a); *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973). The Law Firm chose not to contest this assertion—though Beler might have had assets independent of Social Security income—and dismissed the citation. The account was frozen for 23 days between the Bank's receipt of the citation and the Law Firm's release of the citation. Instead of paying GE Capital $731, Beler paid the Bank $70 (a fee imposed for processing the citation) and her lawyer $1,000. She also hired a second lawyer, who filed this federal suit against the Law Firm. The judgment debt remains outstanding.

Beler contends that the Law Firm—a "debt collector" for purposes of the federal Act, see *Heintz v. Jenkins*, 514 U.S. 291 (1995)—violated 15 U.S.C. §1692e and §1692f during the state litigation. The Law Firm does not contend that these contentions should have been raised in state court. Any potential invocation of claim preclusion, see *Epps v. Creditnet, Inc*., 320 F.3d 756 (7th Cir. 2003); *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000), thus has been forfeited. But the Law Firm does defend on the merits, and the district court granted summary judgment

in its favor. See 2006 U.S. Dist. LEXIS 31762 (C.D. Ill. May 18, 2006).

According to Beler, the complaint filed in the state suit and an attached affidavit violated the FDCPA because their description of the contracts among JCPenney, Monogram Bank, and GE Capital was not clear enough to enable an unsophisticated consumer (see *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254 (7th Cir. 1994)) to understand the relation among merchant, transaction processor, and creditor. The confusing description violated 15 U.S.C. §1692e, the argument goes.

This theory assumes that the federal Act regulates the contents of complaints, affidavits, and other papers filed in state court. The Law Firm is a debt collector, to be sure, and we held in *Thomas v. Simpson & Cybak*, 392 F.3d 914 (7th Cir. 2004) (en banc), that the statutory "verification notice" must precede or accompany a complaint when the creditor's law firm satisfies the definition of a debt collector. But *Thomas* did not imply that the FDCPA dictates the complaint's contents; to the contrary, we suggested (though we did not have an occasion to hold) that the state's rules of procedure, not federal law, determine which facts, and how much detail, must be included in documents filed with a clerk of court for presentation to a judge. A recent amendment nullified the holding of *Thomas*: legal pleadings no longer need be preceded or accompanied by verification notices. Pub. L. 109-351, 120 Stat. 2006 (Oct. 13, 2006), adding 15 U.S.C. §1692g(d). Given this amendment and the limited rationale of *Thomas* itself, it is far from clear that the FDCPA controls the contents of pleadings filed in state court.

Let us suppose, for the sake of argument, that §1692e applies to complaints, briefs, and other papers filed in state court. (We postpone to some future case, where the answer matters, the decision whether §1692e covers the process of litigation.) Beler thinks that the Act requires

everything from a debt collector's pen to be in plain language, but that's not so. Several parts of the FDCPA require notice about particular topics, and we have held that the required notices must be clear rather than muddy. That's some distance from saying that everything a lawyer writes during the course of litigation must be stated in plain English understandable by unsophisticated consumers. However desirable that might be, it is not a command to be found in the FDCPA.

Section 1692e does not require clarity in all writings. What it says is that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." A rule against trickery differs from a command to use plain English and write at a sixth-grade level. Beler does not contend that the complaint was deceptive and that the Law Firm set out to trick her into paying money she does not owe, or to mislead her into paying the wrong person. Whatever shorthand appeared in the complaint— the payments system through which credit-card slips flow is complex, and even many lawyers don't grasp all of its details—was harmless rather than an effort to lead anyone astray. It was the judge, not Beler, who had to be able to determine to whom the debt was owed, for it is the judge (or clerk of court) rather than the defendant who prepares the judgment specifying the relief to which the prevailing party is entitled.

Beler's second theory is that the Law Firm violated 15 U.S.C. §1692f by serving a citation that caused her bank to freeze her checking account for three weeks. This statute provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." What is "unfair or unconscionable"? The statute does not say. Although the FDCPA does authorize the Federal Trade Commission to issue advisory opinions giving shape to these and other vague terms, 15 U.S.C.

§1692*l*(c), the FTC has not issued any advisory opinions that bear on the question at hand. Nor has it issued any helpful opinions in enforcement proceedings under 15 U.S.C. §1692*l*(a).

No other court of appeals has dealt with this subject either. Instead of asking us to make rules in common-law fashion, and apply them retroactively, Beler wants us to use §1692f to enforce other legal rules. Her theory is that it is "unfair" or "unconscionable" for a debt collector to violate any other rule of positive law. She has in mind 42 U.S.C. §407(a), which exempts Social Security benefits from attachment or other legal execution, and Illinois law, which adopts the same rule. See *Fayette County Hospital v. Reavis*, 169 Ill. App. 3d 246, 523 N.E.2d 693 (5th Dist. 1988).

There are two problems with Beler's approach. First, §1692f creates its own rules (or authorizes courts and the FTC to do so); it does not so much as hint at being an enforcement mechanism for other rules of state and federal law. This is not a piggyback jurisdiction clause. If the Law Firm violated the Social Security Act, that statute's rules should be applied. Likewise if the Law Firm violated Illinois law. Section 1692f does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $75,000 and the parties are not of diverse citizenship.

Second, the Law Firm did not violate any anti-attachment rule. No exempt property reached GE Capital. The citation used the precise language required by state law, see 735 ILCS 5/2-1402(b), telling the Bank *not* to turn over any exempt asset and informing it that a judgment debtor has a right to a hearing before any property is transferred to a creditor.

This citation had the practical effect of freezing the account until the Bank knew what was exempt. Beler

could have asked a judge under 735 ILCS 5/2-1402(*l*) to separate exempt from non-exempt assets; at the debtor's request, the court must afford a "prompt hearing date". (The Supreme Court of Illinois held in *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307, 533 N.E.2d 1080 (1989), that a prompt post-citation hearing is adequate as a matter of both state law and the federal Constitution.) But instead of demanding a judicial resolution, Beler (through counsel) and the Law Firm resolved the issue amicably, and the citation was dismissed. Illinois law was followed to the letter.

Beler could prevail under §1692f only if we were to declare, as a matter of federal common law, that a pre-citation hearing is essential to "fair" debt collection, lest exempt assets be immobilized for even a brief period, even though a freeze plus a post-citation hearing complies with state law. Whatever may be said for or against pre-citation hearings as a matter of wise public policy, such a rule should be adopted (if at all) through the administrative process or a statutory amendment rather than judicial definition of the phrase "unfair or unconscionable". The legislative and administrative processes can take full account of all affected interests in a way that judicial case-by-case decisionmaking cannot.

How often, for example, would a pre-citation notice enable debtors to clean out accounts and hide their assets, frustrating efforts to collect judgments? How often do banks erroneously hand over exempt assets when they misconstrue citations and think that immediate action is required? How long does Illinois take to afford judicial resolution when a post-citation request is made? The longer it takes, the more attractive is a pre-citation hearing even at some cost in allowing debtors to evade collection. But we know none of these vital details and thus are poorly suited to make a rule on the subject. At all events, Beler does not ask us to do so (as we've men-

tioned, her argument is that we should use §1692f to enforce existing state and federal laws exempting certain assets from execution).

Section 1692f certainly does not create a pre-citation hearing requirement on its own. The phrase "unfair or unconscionable" is as vague as they come. The list following the main clause provides some guidance. Here is the full text:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
> >
> > (2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.
> >
> > (3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.
> >
> > (4) Depositing or threatening to deposit any postdated check or other postdated

payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

>  (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

>  (B) there is no present intention to take possession of the property; or

>  (C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

None of these illustrations implies that federal courts should make new rules that change how state-court judgments are collected. Subsection (6) is especially

interesting. It says that creditors may not take "nonjudicial" actions that seize property exempt by law. The implication is that state judicial proceedings are outside the scope of §1692f. State judges may decide how their judgments are to be collected. This does not necessarily mean that the FTC must steer clear of the subject, but it certainly implies that federal judges ought not use this ambulatory language to displace decisions consciously made by state legislatures and courts about how judgment creditors collect judgments entered under state law.

AFFIRMED


A true Copy:

      Teste:


                _____
                *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*