In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3115

APEX DIGITAL, INCORPORATED,

*Plaintiff-Appellant,*

*v.*

SEARS, ROEBUCK & COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:09-cv-01452 — **John W. Darrah**, *Judge.*

ARGUED SEPTEMBER 10, 2013 — DECIDED NOVEMBER 20, 2013

Before KANNE, WILLIAMS, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* This suit was brought by Apex Digital, Incorporated, to collect money for goods they sold to Sears, Roebuck & Company. Apex alleged that Sears breached their contract by refusing to pay the total amount it owed to Apex for goods delivered. Sears argued that this action was barred by the four-year statute of limitations set forth in Section 2–725 of the Uniform Commercial Code (the "UCC"). Both parties moved for summary judgment. The district court

found that Apex failed to file suit within the requisite time period and granted Sears' motion for summary judgment. Apex filed this timely appeal. For the reasons set forth below, we affirm the decision of the district court.

## I. BACKGROUND

### A. The Universal Terms and Conditions

Apex and Sears entered into the Sears Roebuck & Co. Universal Terms and Conditions (the "UTC") agreement on September 12, 2003. The purpose of the agreement was to allow Sears, a retailer, to place orders for goods with Apex, a manufacturer of electronics.[1] The UTC covered all merchandise sold by Apex to Sears and "appl[ied] to, and is incorporated into, all other Vendor Agreements." The vendor agreements were to "contain the entire understanding of [Apex] and Sears with respect to the subject matter of such Vendor Agreements[.]" Furthermore, the UTC stated that the agreements "may not be supplemented or modified by course of dealing, course of performance, any oral communication between the parties, or any responses by [Apex], … unless such response is in writing and executed or consented to in writing by Sears." According to the UTC, the vendor agreements and purchase orders constituted a single agreement between the parties.

---

[1] Apex was in the business of purchasing products from overseas manufacturers and marketing and distributing these products in the United States under the "Apex" brand name. These products included digital cameras, televisions, DVD players, and other consumer electronics.

*B. Payment of Invoices*

Following the delivery of goods, Apex sent electronic invoices to Sears. Though not explicitly written in the UTC, both parties' records reflect a "Net 60" payment term, meaning payment was due sixty days from the date of the invoice. The parties' actions also indicate that they were operating under this payment arrangement. Apex accounted for its invoices to be due sixty days after issuance of each invoice. Sears' Business Exchange sets forth the payment terms between Sears and Apex as "Net 60 Receipt of Goods."

Upon receipt of an invoice from Apex, Sears' accounts payable system confirmed the terms of the invoice and then paid Apex according to the "Net 60" payment term, though Sears did not always pay the full amount owed. Sears withheld money for expected returns and other deductions to which it believed that it would be entitled in the future. Deductions that were disputed by Apex were labeled "charge-back deductions" on Apex's Invoice Report. Apex alleges that Sears owes $11,940,758.05 in charge-back deductions.

Apex also contends that Sears owes $3,029,028.00 in unpaid invoices. The last invoices listed by Apex that remain outstanding are dated November 9, 2004, and constituted the final transaction between the two parties. Thus, according to the "Net 60" provision, these invoices were due no later than January 8, 2005. All of the other invoices for goods that Sears purchased from Apex pre-date the November 9, 2004 invoices.

### C.  The Return Reserve

On or about July 6, 2004, Sears implemented Program Agreement 99671 ("PA 99671") to create a return reserve on Apex's account. The return reserve was an internal accounting mechanism used to place a negative dollar deduction on Apex's account. In other words, Sears would hold back any payment to Apex until the amount showing owed by Sears exceeded the amount of the reserve.

### D.  District Court Proceedings

At the summary judgment proceedings, Apex argued that it was entitled to collect money it believed Sears owed on the unpaid invoices and charge-back deductions. Apex alleged that Sears owed $8,185,302.24.[2] The complaint alleged that Sears withheld money and stopped paying Apex for goods that Apex delivered.

Sears asserted that Apex's complaint was barred by the four-year statute of limitations, as it was filed on March 6, 2009. According to the "Net 60" payment term, the latest expected payment would have been due no later than January 8, 2005, as the last invoice received was from November 9, 2004. Apex maintained that the amounts in question could not have been due earlier than January 2006 as Sears' payments were advances against a debt. Apex also suggested that Sears' payment

---

[2]  Apex's Invoice Report contains a positive dollar entry of $15,108,074.55 and $2,960,474.79 of merchandise return credits to be applied against the sum for a net positive dollar figure of $12,147,599.76. Apex stated in its Complaint that Sears was entitled to an additional $3,962,297.52 in credits, leaving a total balance of $8,185,302.24.

obligations were held open until Apex determined the full amount owed through a final accounting that was to be done once the business relationship ended.

Regarding the deductions, the district court found that Apex's argument was contrary to the explicit language found in the UTC, which allows Sears to unilaterally deduct from the amount it owed on the invoices. Rather than making advance payments to Apex, Sears paid each invoice separately and took deductions as it deemed appropriate. Each invoice and deduction was its own transaction. The last deduction occurred on December 21, 2004, which is when the statute of limitations began to run. Therefore, Apex's March 6, 2009 complaint was filed four years too late and barred by the statute of limitations.

As for the unpaid invoices, Apex argued that the "Net 60" term, taken from invoices, did not apply. It argued that any change to the UTC had to be in writing by Sears and, since the invoices were not signed by Sears, the "Net 60" provision was invalid. The district court concluded that while the UTC addressed electronic payment of Apex's invoices, it did not set forth a specific time that payments would be due. Thus, the parties' course of dealing was able to supplement the written agreement.

As a result, Apex knew or should have known that the payment was due sixty days after the receipt of the goods. Therefore, the district court found that the breach occurred no later than January 8, 2005, and Apex's March 6, 2009 complaint was untimely filed and barred by the statute of limitations.

## II. Analysis

*A. Standard of Review*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We review the district court's decision to grant summary judgment *de novo*, and generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party. *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 702 (7th Cir. 2012). Apex, however, failed to properly respond to Sears' statement of facts in support of its motion for summary judgment as mandated by Northern District of Illinois Local Rule 56.1. It states, "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. R. 56.1(b)(3)(C); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311,1313 (7th Cir. 1995). Thus, we depart from our usual deference towards the non-moving party, Apex, and accept all of Sears' unopposed material facts as true. *Johnson v. Gudmundsson*, 35 F.3d 1104, 1108 (7th Cir. 1994).

*B. Statute of Limitations*

There is no dispute that Section 2–725 of the UCC, 810 ILL. COMP. STAT. 5/2–725, governs the outcome of this suit. It states, "An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued." 810 ILL. COMP. STAT. 5/2–725(1). The central issue is when the cause of action accrued. Apex brings this cause of action for breach of contract for failure to pay invoices and also maintains

that Sears owes for wrongful deductions it took when paying the invoices.

*1. Invoices*

Apex argues that the UTC and PA 99671[3] demonstrate that Sears' payment obligations were advances against a debt and payment was not due until after Sears' final returns of Apex products in 2006. According to Apex, a final accounting of Sears' and Apex's business relationship was required and the parties would settle any remaining debts at that unspecified date in 2006.

Apex seeks to disregard the "Net 60" provision, notwithstanding the fact that the term is found in its own invoices. Indeed, the parties operated throughout the course of their dealings with the understanding that payment of invoices was due sixty days from the date of the invoice. Apex argues that the "Net 60" provision is not a part of the UTC, as the UTC is to embody the whole agreement between Apex and Sears and "may not be supplemented or modified by course of dealing[.]" Supplementing the UTC with the course of dealing via the "Net 60" arrangement, Apex contends, contradicts the explicit language in the contract.

---

[3]  Apex contends that PA 99671, the return reserve that Sears used to hold back money from Apex from July 6, 2004 to March 31, 2005, held open the obligation to pay until the end of March 2005. PA 99671, however, was not a part of the UTC or any agreement between the two parties. Rather, PA 99671 was an internal accounting mechanism that Sears put forth to place a negative dollar deduction on Apex's account. Apex was not privy to PA 99671, nor would it want to be; the whole purpose of PA 99671 was to withhold funds from Apex.

Under Illinois law, "the objective in interpreting a contract is to ascertain and give effect to the intent of the parties." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) (quoting *Carey v. Richards Bldg. Supply Co.*, 856 N.E.2d 24, 27 (Ill. App. Ct. 2006)). Our interpretation of the agreement is guided by "the objective manifestations of the parties, including the language they used in the contract." *Id*. Where the language is plain, a contract should be enforced as written. *Id*.

It is true that the "Net 60" term does not appear in the UTC. It is also true that the UTC prohibits supplementing or modifying the UTC without the express written consent of Sears, which was never provided. And while the UTC mentions how invoices are to be paid, there is nothing that indicates *when* they are due. Thus, under the UCC, the contract may be supplemented to give full meaning to the parties' intent. In the absence of explicit contractual language, we look to the parties' conduct to establish intent. *Capitol Converting Equip., Inc. v. LEP Transp., Inc.*, 965 F.2d 391, 396 (7th Cir. 1992) ("Where, as here, an agreement is silent on a particular term, a course of dealing may fill the void."). The "Net 60" payment term was implemented by both Apex and Sears, in writing (on the invoices) and through the course of their dealing. While the term may not have been explicitly written in the UTC, the parties clearly intended to operate under the "Net 60" payment arrangement.

Thus, payment was due sixty days after Sears received the invoice from Apex. Sears received its last invoice from Apex on November 9, 2004, which would render payment due on or before January 8, 2005. After that date, Apex was aware that Sears was not going to pay the invoice and the action was ripe to bring suit. Once a party is apprised of a breach, the statute

of limitations begins to run. *Kozasa v. Guardian Elec. Mfg. Co.*, 425 N.E.2d 1137, 1141 (Ill. App. Ct. 1981) ("The statute of limitations begins to run when facts exist which authorize the bringing of an action.").

In accordance with the "Net 60" payment arrangement, Apex knew that Sears was not going to pay the invoice sixty days from the date that it was issued. Thus, on January 8, 2005, Apex had a legal right to demand payment from Sears. *Armstrong v. Hedlund Corp.*, 738 N.E.2d 163, 169 (Ill. App. Ct. 2000) ("When a creditor may legally demand payment from a debtor, a cause of action accrues and the statute of limitations begins to run."). Yet Apex waited until March 6, 2009 to assert its claim against Sears, more than four years after the alleged breach occurred. Its claim is therefore barred by the statute of limitations.

### 2. *Charge-back Deductions*

Apex also alleges that Sears owes it for charge-back deductions that date back to December 21, 2004. Apex noted such deductions each time Sears withheld money from a payment that Apex disagreed with. Again, Apex argues that these deductions were not actionable at the time they were taken; rather, a final accounting had to take place in order to determine the final obligations of the parties. But the parties were clearly operating under the "Net 60" payment term and therefore each invoice was being paid individually. Thus, each deduction was actionable at the time it was taken. *Hi-Lite Prods. Co. v. Am. Home Prods. Corp.*, 11 F.3d 1402, 1408–9 (7th Cir. 1993) ("Each partial breach is actionable and subject to its own accrual date and own limitation period."). Sears was not

making advance payments in anticipation of a final accounting. Sears paid each invoice individually and decided for each invoice how much money was to be deducted. It provided this information to Apex and only sent the money that it believed was owed.

As a result, Apex was put on notice that Sears was not going to pay the deductions after each invoice. Apex even marked these "wrongful" deductions in its own Invoice Report. Nonetheless, for more than four years, Apex sat on its right to sue for money that it was allegedly owed by Sears. This is the precise behavior that Section 2–725 of the UCC prohibits. Apex's claim has expired and it cannot prevail against Sears.

### III. CONCLUSION

Apex knew that Sears owed it money for goods, yet failed to take any action for more than four years, placing its claim outside of the limitations period set forth in the UCC as adopted in Illinois. Accordingly, we AFFIRM the district court's granting of Sears' motion for summary judgment.