Grant E. BENTRUD, Plaintiff–
Appellant,

v.

BOWMAN, HEINTZ, BOSCIA &
VICIAN, P.C., Defendant–
Appellee.

No. 14–2384.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 2014.

Decided July 27, 2015.

Robert E. Duff, Attorney, Indiana Consumer Law Group, Lebanon, IN, for Plaintiff–Appellant.

David M. Schultz, Attorney, Hinshaw & Culbertson LLP, Chicago, IL, Jennifer J. Kalas, Attorney, Hinshaw & Culbertson LLP, Schererville, IN, for Defendant–Appellee.

Before POSNER, RIPPLE, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Grant E. Bentrud owes Capital One Bank, N.A. ("Capital One"), money—$10,955.20 to be exact. He amassed that debt on his credit card, and he does not dispute it here. Bentrud's dispute instead concerns the manner in which Capital One's lawyers attempted to collect the debt. The way he sees it, Bowman, Heintz, Boscia & Vician, P.C. ("Bowman Heintz"), an Indiana law firm specializing in debt collection, committed multiple violations of the Fair Debt Collection Practices Act ("FDCPA") during their collection efforts.

To remedy those alleged violations, Bentrud commenced this action in the Southern District of Indiana. After a volley of motions between the parties, the district court granted summary judgment in favor of Bowman Heintz on each of Bentrud's FDCPA claims. For the reasons expressed below, we affirm the judgment of the district court.

## I. BACKGROUND

The alleged FDCPA violations that form the basis for this federal case occurred in state court. On January 6, 2012, Bowman Heintz filed a complaint in Hendricks County Superior Court in Indiana. There, Bowman Heintz sought recovery of the full amount of Bentrud's credit card debt owed to Capital One. The case proceeded unremarkably, and nearly ten months later, on October 1, 2012, Bowman Heintz filed a motion for summary judgment. See Ind. R. Trial P. 56(c).

Bentrud responded to that motion by invoking the arbitration provision in his credit card agreement with Capital One. The arbitration provision provides: "If you or we elect arbitration of a claim, neither you nor we will have the right to pursue that claim in court or before a judge or jury." The state court granted Bentrud's election of arbitration and denied Bowman Heintz's motion for summary judgment. It also stayed the case, allowing Bentrud thirty days to initiate arbitration. If, however, Bentrud failed to initiate arbitration within that window, the court ordered the stay "automatically dissolved."

That was a prescient order, because a curveball quickly emerged: no one agreed to do the arbitration. The American Arbitration Association ("AAA") declined because Capital One had previously failed to comply with its policy regarding consumer claims. Although it is unclear whether Bentrud, Bowman Heintz, or Capital One

attempted to contact other possible arbitrators, what is clear is that after AAA declined, efforts to arbitrate stalled. Bentrud subsequently failed to meet the thirty-day deadline (April 11, 2013) set by the state court, which meant that the stay was automatically dissolved.

So on May 20, 2013, more than a month after the deadline to arbitrate had lapsed, Bowman Heintz filed a second motion for summary judgment.[1]

Importantly, that filing forms the first basis of Bentrud's FDCPA case. For he characterizes that motion, made after he had elected to pursue arbitration of the debt claim, as an unfair or unconscionable means of attempting to collect a debt. *See* 15 U.S.C. § 1692f. This FDCPA claim, of course, did not arise until Bentrud filed his federal action in the Southern District of Indiana. At the time, Bentrud simply responded to the second motion for summary judgment with a combined "Verified Motion to Dismiss or Continue Stay." The state court granted the continuance but denied the motion to dismiss. It extended his deadline to initiate arbitration to July 31, 2013—three months after the original deadline. That extension worked, as Bentrud and Capital One are now proceeding with arbitration of the state-law debt collection claim.

Bentrud has another FDCPA claim against Bowman Heintz. His second claim concerns interest rates. Two rates are at issue here: 10.65% and 13.9%. Bentrud claims that from May 17, 2009 to May 16, 2011, the Annual Percentage Rate ("APR") on his credit card debt with Capital One was 13.9%. That APR is reflected on his May 16, 2011, statement from Capital One. Yet when Bowman Heintz filed its complaint in the state court action, it averred the applicable interest rate to be 10.65%. Bentrud, apparently unsatisfied with that reduced interest rate, sees impropriety in the averment.

So he advances an either-or argument against Bowman Heintz. *Either* the correct interest rate is 13.9%, in which case Bowman Heintz misrepresented the interest rate when it averred the interest rate to be 10.65% in its complaint. *See* 15 U.S.C. § 1692e (prohibiting misrepresentation of the amount of the debt). *Or* the correct interest rate is 10.65%, in which case Bowman Heintz attempted to collect a debt that was not authorized by the terms of the agreement. *See* 15 U.S.C. § 1692f(1) (prohibiting collection of a debt not authorized by the agreement). Regardless, he argues, Bowman Heintz violated the FDCPA.

Before turning to the merits, we make a couple of observations on this second FDCPA claim. First, Bentrud's credit card agreement with Capital One expressly states that Capital One "may add, delete or change any term" of the agreement at "any time[.]" That same agreement further states that Bentrud's APR may go up or down, depending on the market index.

Second, record evidence demonstrates that Capital One formally changed Bentrud's rate to 10.65% on May 17, 2011—nearly seven months before Bowman Heintz filed its complaint. With that change came the deletion of the "D" designation accompanying the interest rate. According to the terms of the agreement, the presence of a "D" next to the interest rate signifies that the interest rate was calculated using the monthly prime rate

---

1. There is some question as to whether this motion was actually a *second* motion for summary judgment or a mere *renewal* of the first motion for summary judgment. At oral argument, counsel for Bowman Heintz presented it as the latter. Given the posture of this case and the fact that the state court *denied* Bowman Heintz's initial motion for summary judgment, we treat the motion as a second, discrete motion for summary judgment.

(3.25%) *plus* a previously disclosed margin. The earliest statement that Bentrud gave the district court—May 16, 2011—listed a "D" next to the 13.9% interest rate. By contrast, the next statement—dated August 15, 2011—lists the interest rate at 10.65% without the "D" designation. Some math: 13.9% minus the monthly prime rate of 3.25% equals 10.65%—the rate Bowman Heintz averred in its complaint.

## II. ANALYSIS

We review a district court's grant of summary judgment *de novo*. *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir.2014). Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact. Fed.R.Civ.P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). A fact is "material" if it is one identified by the law as affecting the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. We "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck, & Co.*, 735 F.3d 962, 965 (7th Cir.2013). On cross-motions for summary judgment, we draw inferences "in favor of the party against whom the motion under consideration was made." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 500 (7th Cir.2008).

Regarding the FDCPA, Congress passed the Act to eliminate the many evils associated with debt collection. Under the FDCPA, no longer may debt collectors: (1) make false or misleading representations; (2) attempt to collect an amount (including interest) not authorized by the agreement; or (3) engage in unfair practices when attempting to collect a debt. *See* 15 U.S.C. §§ 1692e-f. Although the FDCPA forbids other conduct, these three proscriptions form the focus of Bentrud's appeal. We note that his opponent, Bowman Heintz, qualifies as a "debt collector" under the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

Our analysis starts with the summary judgment motion and then proceeds to the interest rate issue.

### A. The Second Motion for Summary Judgment

■ Bentrud claims that Bowman Heintz's second motion for summary judgment violated 15 U.S.C § 1692f.[2] That section states in relevant part: "A debt collector may not use *unfair or unconscionable means* to collect or attempt to collect any debt." 15 U.S.C. § 1692f (emphasis added). Unfortunately, the statute does not define the phrase "unfair or unconscionable," and we have called the phrase "as vague as they come." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir.2007). Fortunately, however, the statute provides a list of eight illustrative violations. We need not list each of them; subsection (6) is the most relevant one here.

That subsection prohibits "[t]aking or threatening to take any *nonjudicial action* to effect dispossession or disablement of

---

2. Below, Bentrud also argued that the motion constituted "harassment or abuse" under 15 U.S.C. § 1692d. He abandons that theory on appeal, now asserting his "claim is *only* about whether it was *unfair* to file the second summary judgment motion in light of the terms of the parties' arbitration agreement." (emphasis added). Whether a debt-collection practice is unfair is a question of law under § 1692f.

property" under certain circumstances. 15 U.S.C. § 1692f(6)(A)-(C) (emphasis added). The operative phrase here, is "nonjudicial action." It implies "that state judicial proceedings are outside the scope of § 1692f." *Beler*, 480 F.3d at 475. And if state judicial proceedings are outside the scope of § 1692f, then Bentrud does not have a leg to stand on. For it is undisputed that the basis for his § 1692f action against Bowman Heintz flows from the state proceedings in Hendricks County Superior Court. Accordingly, we very much doubt that a state court motion for summary judgment—filed to collect an overdue credit card debt—could qualify as an unfair or unconscionable act under the FDCPA. Nevertheless, we note that subsection (6) is merely one of eight illustrations in a non-exhaustive list. 15 U.S.C. § 1692f (stating the list does not limit the general application of the section). So we look to the facts of this particular case before we pass judgment on Bentrud's claim.

Significantly, there is only one fact that matters for Bentrud's FDCPA claim under § 1692f: the invocation of his arbitration provision with Capital One. Once again, that arbitration provision states: "If you or we elect arbitration of a claim, neither you nor we will have the right to pursue that claim in court or before a judge or jury." Given the plain terms of that provision, Bentrud argues that it was unfair for Bowman Heintz to file its second motion for summary judgment after he had elected arbitration. So unfair, in fact, that by doing so it offended § 1692f of the FDCPA. We disagree.

■ The FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law. *Beler*, 480 F.3d at 474. But that is what Bentrud is

attempting to do here; he seeks to transform the FDCPA into an enforcement mechanism for the arbitration provision in his credit card agreement. In *Beler*, we rejected such a use of § 1692f. There, the appellant theorized that it was " 'unfair' or 'unconscionable' for a debt collector to violate ... rule[s] of positive law." *Id.* at 473. Specifically, the appellant faulted a debt collector law firm (like the one here) for allegedly violating federal and state laws exempting Social Security benefits from execution or attachment. *Id.* at 473–74. We denied the claim, noting that both the federal and state laws implicated provided remedies for violations.

So it is here. If Bentrud is concerned about Bowman Heintz resuming litigation after he elected arbitration—a procedural oddity, at worst—his remedy sounds in breach of contract, not the FDCPA. A contrary ruling would require us to declare that adherence to an arbitration provision in a contract, even in the face of a state court order to the contrary, is essential to fair debt collection. *Cf. Beler*, 480 F.3d at 474. This we will not do.

Prudential considerations compel this result. Forget about the state court's order giving Bentrud thirty days to initiate arbitration, Bentrud impliedly argues; because once invoked, the arbitration provision forever barred Bowman Heintz from resuming litigation in court. Of course that cannot be the case. Once the thirty-day deadline of April 11, 2013, lapsed, the state court's stay was, as the court put it, "AUTOMATICALLY DISSOLVED." [3]

Bowman Heintz, at that point, had every reason to resume litigation on behalf of its client Capital One. Indeed, if it did not resume litigation, then Bowman Heintz

---

**3.** When a judicial order includes key phrases in capital letters, as the state court's order did here, it is the literary equivalent to shouting. *Cf.* Pat R. Graves & Joyce Kupsh, *Presentation*

*Design & Delivery: Be Professional and Effective* 27 (2009) ("Using all capital letters (uppercase) is like SHOUTING!"). Litigants disobey the order at their peril.

may have run afoul of one of the primary pillars of effective representation—diligence. *See* Model Rules of Prof'l Conduct R. 1.3. (2004). What is more, the Indiana Rules of Trial Procedure empower trial courts to dismiss civil actions for "failure to prosecute" when no action has been taken on a case for a period of sixty days. Ind. R. Trial P. 41(E). Had Bowman Heintz waited another month—it had already waited five weeks after the original deadline lapsed—to file *something* with the court, it could have faced the ordeal of a show-cause hearing to prevent dismissal of its case. *Id.*

Bentrud, then, would have Bowman Heintz choose between dismissal for failure to prosecute and a possible malpractice claim from Capital One, on the one hand, and a potential, albeit uncertain, FDCPA violation, on the other. That is an easy choice for Bowman Heintz. In filing its second motion for summary judgment, Bowman Heintz made the only choice that a reasonable advocate in its position would have made. And that choice does not equate to an unfair or unconscionable means of attempting to collect a debt.

If anything, Bentrud's real gripe lay with the state court for setting a deadline to arbitrate. That initial thirty-day deadline set these wheels in motion. Without it, there would be no incentive to press forward with the case after efforts to arbitrate stalled and the deadline lapsed. Tellingly, however, Bentrud did not complain of the deadline when it was first imposed. Nor did he file a motion seeking clarification of the state court order setting the deadline. Bentrud proceeded with the litigation, as any party would. The state court acted within its discretion when it set a deadline for Bentrud to initiate arbitration, just as it acted within its discretion

when it extended that deadline for another three months.

In sum, when Bowman Heintz filed a second motion for summary judgment, it acted consistently with the state court order setting a time limit to initiate arbitration. We do not find that such a motion is an unfair or unconscionable means of attempting to collect a debt under § 1692f. Nor will we transform the FDCPA into an enforcement mechanism for matters governed by state law. We turn now to Bentrud's final issue on appeal.

## B. The Interest Rates

Bentrud's next claim against Bowman Heintz is similarly unavailing. The gist of this claim is that Bowman Heintz averred an interest rate—10.65%—in its complaint that was different than the interest rates Capital One previously reported in its credit card statements—13.9%. In light of this discrepancy, Bentrud argues that one of two possibilities results: either (1) Bowman Heintz misrepresented the interest rate when it alleged 10.65% in its complaint, in violation of 15 U.S.C. § 1692e; or (2) Bowman Heintz attempted to collect a debt not authorized by the agreement, in violation of 15 U.S.C. § 1692f(1). We reject this either-or argument.

On summary judgment, the central question is whether there is a genuine issue of material fact for trial. Here, Bentrud offered no evidence that Bowman Heintz misrepresented the interest rate applicable to Bentrud's debt with Capital One,[4] or attempted to collect a debt not authorized by the agreement. Because there is no evidence to support a theory under § 1692e or § 1692f(1), the district

---

**4.** Because we do not find evidence supporting the misrepresentation theory under § 1692e,

we need not decide whether the bona fide error defense applies to Bowman Heintz.

court properly granted summary judgment in favor of Bowman Heintz.

In its January 6, 2012 state court complaint filed on behalf of Capital One, Bowman Heintz averred that the interest rate applicable to Bentrud's debt was currently "10.65% per annum." That averment is corroborated by Capital One's August 2011 statement and by the affidavit of Stephen Hardy, a representative of Capital One. Hardy's affidavit, which was attached to the state court complaint, swears that Bentrud owed $10,955.20 with interest accruing from May 17, 2011 "at an annual percentage rate in accordance with the Customer Agreement, currently 10.65%."

These facts do not evince a discrepancy. The earliest statement that Bentrud provided to the district court was the May 16, 2011 statement. To be sure, that statement listed the interest rate as 13.9%. But no other statements provided to the court did. In fact, the date noted by Hardy—May 17, 2011—is one day after the earliest statement provided to the district court by Bentrud. The August 2011 statement is months later, and that, too, lists the interest rate to be 10.65%. The same is true for the complaint itself, which averred that as of October 8, 2011, the interest rate was 10.65%. These rates are not inconsistent; they simply apply at different points in time.

What is more, the record evidence demonstrates that interest rates could go up or down, and that Capital One could change the rates. These facts are consistent with the terms of the credit card agreement. The actual change that occurred here is also consistent with the terms of the agreement. Capital One dropped the "D" designation from the APR listed on Bentrud's August statement. When it did, the amount that the "D" represented, the

3.25% prime rate, also dropped.[5] The result is that 13.9% became 10.65%, a reduced amount that, we note, is advantageous to Bentrud. This is math. It is not a misrepresentation, and it is not an attempt to collect an amount not authorized by the terms of the agreement. In short, it is not an FDCPA violation.

Bentrud has one arrow left in his quiver. He claims that the district court inferred that Capital One's change to the interest rate constituted a legal—rather than illegal—change. In assuming that Capital One's change was of the legal variety, he argues that the district court made an impermissible, adverse inference against him, the non-movant. *See Apex Digital, Inc.*, 735 F.3d at 965 (construing all facts and inferences on summary judgment in the light most favorable to the non-moving party). We reject this argument.

First and foremost, Capital One is not a party to this action. If Bentrud has a complaint with the manner in which Capital One changed (i.e. reduced) the interest rate, he can raise that issue in arbitration. The district court's inquiry, and ours on appeal, concerns the representations and collection efforts of Bowman Heintz, the party alleged by Bentrud to have committed the FDCPA violations. Based on the record before us, Bentrud has not raised a triable issue that Bowman Heintz either misrepresented the interest rate or attempted to collect an amount not authorized by the agreement with Capital One.

Because Bentrud failed to carry his burden, *see Hess v. Kanoski Bresney*, 784 F.3d 1154, 1159 (7th Cir.2015) (holding plaintiff to his burden of persuasion on appeal of summary judgment), his second FDCPA claim, theorized under § 1692e and § 1692f(1), fails.

---

**5.** Per Hardy's affidavit, the lower rate applied on May 17, 2011. The August 2011 statement merely reflects that fact.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.