In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2045

CASIMER ZABLOCKI and REGINA JOHNSON, individually and on behalf of all others similarly situated

*Plaintiffs-Appellants*,

*v.*

MERCHANTS CREDIT GUIDE CO.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-8489 — **Rebecca R. Pallmeyer**, *Chief Judge.*

ARGUED JUNE 2, 2020 — DECIDED JULY 28, 2020

Before FLAUM, KANNE, and BRENNAN, *Circuit Judges*.

KANNE, *Circuit Judge*. As its name suggests, the Fair Debt Collection Practices Act ("FDCPA") prohibits debt collection practices that are "unfair." 15 U.S.C. § 1692f. This case tests the bounds of that term.

Casimer Zablocki and Regina Johnson received medical services and did not remit their parts of the bills. The medical-

service providers turned to Merchants Credit Guide for debt collection, and Merchants eventually reported the unpaid debts to a consumer reporting agency. When Merchants reported the debts, it listed separately the debt for each medical-service charge. Zablocki and Johnson sued Merchants on the theory that reporting the obligations separately, rather than aggregating them together, was an "unfair" way to collect the debts under § 1692f of the FDCPA.

The district court dismissed this theory as unsupported by the FDCPA's prohibition of "unfair or unconscionable" means to collect a debt. 15 U.S.C. § 1692f. We affirm.

## I. BACKGROUND

In 2013, Casimer Zablocki obtained medical services that included several x-rays administered by Medical-Midwest Imaging Professionals. Medical-Midwest billed Zablocki for the x-ray services, and after his insurance provider covered some of the costs, Zablocki was left owing a certain amount on each x-ray charge. A couple of years passed without Zablocki remitting his share of the bills. As a result, Medical-Midwest turned to Merchants Credit Guide for debt collection. After about two years without success collecting the debts, Merchants reported to a consumer reporting agency, TransUnion, that Zablocki owes four debts of $50, $62, $70, and $210, corresponding to each x-ray charge.

Regina Johnson's story is similar. She received medical services from Medical-Elmhurst Memorial Healthcare, who billed Johnson for the services. Johnson ended up owing various sums on ten medical-service charges, which went into default. Medical-Elmhurst turned to Merchants Credit Guide for debt collection, placing the debts with Merchants at

various times over a couple of years. Two more years passed without Merchants successfully collecting the debts. Merchants then reported to TransUnion that Johnson owes ten debts ranging from $84 to $3,603.[1]

Zablocki filed a complaint against Merchants for alleged violations of the FDCPA. He alleged that by reporting the obligations separately, rather than aggregated together, Merchants violated the FDCPA in two ways: first, Merchants falsely represented the "character … of any debt," which is prohibited under § 1692e(2)(A); and second, Merchants used an "unfair or unconscionable means" to collect or attempt to collect a debt, which is prohibited under § 1692f. 15 U.S.C. §§ 1692e(2)(A), 1692f.

Shortly after Zablocki filed this complaint, we decided *Rhone v. Medical Business Bureau, LLC*, 915 F.3d 438 (7th Cir. 2019). In that case, we held that reporting debts separately, rather than aggregated together, does not misrepresent the "character" of a debt under § 1692e(2)(A). *Id.* at 440. Zablocki accordingly abandoned his challenge under § 1692e. He and Johnson then filed an amended complaint asserting a challenge under § 1692f only. Merchants moved to dismiss that complaint for failure to state a claim.

The district court granted Merchants's motion, dismissing the action without prejudice and allowing the plaintiffs to file an amended complaint. The plaintiffs instead appealed the court's dismissal of the action.

---

[1] The ten reported debts were $84; $96; $96; $196; $198; $248; $558; $678; $3,175; and $3,603.

## II. ANALYSIS

We begin with a jurisdictional matter. When the district court dismissed the action without prejudice, it gave the plaintiffs 30 days to replead. On the last day of that repleading window, the plaintiffs filed their notice of appeal. Concerned about the finality of the district court's order, we asked the parties to address our appellate jurisdiction. *See* 28 U.S.C. § 1291 (granting courts of appeals jurisdiction over appeals from "final decisions" of the district courts).

We are now confident that we have jurisdiction. After the plaintiffs filed their notice of appeal, and before the time to replead expired, no activity took place in the district court; the plaintiffs did not file an amended complaint within the 30 days allotted to do so. Consequently, the district court's order became a "final decision" when the 30 days for repleading lapsed. *Id.*; *see Shott v. Katz*, 829 F.3d 494, 496 (7th Cir. 2016); *Albiero v. City of Kankakee*, 122 F.3d 417, 419–20 (7th Cir. 1997).

Satisfied of our jurisdiction, we turn to the merits: Did the plaintiffs state a claim under § 1692f of the FDCPA? We review this inquiry *de novo*, taking all well-pleaded factual allegations as true and drawing all reasonable inferences in the plaintiffs' favor. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

To survive a motion to dismiss, a plaintiff must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That happens when the factual allegations, coupled with the exhibits incorporated into the complaint, allow the court to draw a reasonable inference that the defendant is liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Williamson v. Curran*, 714 F.3d 432, 435–36 (7th Cir.

2013). In making this determination, we "need not accept as true statements of law or unsupported conclusory factual allegations." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). And when the plaintiff relies on a document attached to the complaint and does not deny its accuracy, the facts communicated by that document control over allegations to the contrary. *See Williamson*, 714 F.3d at 445–46.

The plaintiffs based their challenge solely on § 1692f of the FDCPA. That section prohibits not only eight enumerated examples of unfair debt-collection conduct, but also more generally "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The plaintiffs rely on that more general prohibition in asserting the following theory: Rather than reporting as a single aggregated debt the total quantity owed to each creditor, Merchants reported separately the amounts that Zablocki and Johnson owed on each medical-service charge. Had Merchants reported the obligations aggregated together, Zablocki's and Johnson's credit scores would have been higher. By reporting the obligations separately, Merchants leveraged the resulting lower credit scores to collect the debts. This was an "unfair or unconscionable" way, under § 1692f, to collect or attempt to collect the debts.

We begin our evaluation of this theory by addressing a discrepancy between the plaintiffs' allegations; the FDCPA's definition of "debt"; and the documents attached to the complaint, which the plaintiffs use to support their challenge. Zablocki and Johnson allege that they each owed "a single debt" to each creditor, explaining that the entire balance reported by Merchants was "owed to a single medical provider." But the plaintiffs also acknowledge that "debt"

carries the meaning provided by § 1692a(5) of the FDCPA, which defines "debt" on a per-transaction, rather than a per-creditor, basis:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of *a transaction* in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (emphasis added). The plaintiffs also acknowledge that the obligations Merchants reported to TransUnion correspond to individual medical-service charges. For example, the four amounts reported for Zablocki's medical services reflect obligations for different x-ray services. Finally, the plaintiffs attached to their complaint TransUnion consumer reporting documents, which indicate that the reported amounts were not all charged as a single transaction. For each reported obligation, the documents list dates, including when the debt was placed for collection and the estimated month and year when the debt will be removed from the credit report.[2] Those dates, in the attached documents, are not all the same for each separately reported amount.

---

[2] After a certain period of time, debts become stale, with the statute of limitations barring collection lawsuits. *See generally Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679 (7th Cir. 2017) (discussing attempts to collect debts by suing or threatening to sue to collect a consumer debt when the applicable statute of limitations bars such a lawsuit). Also, consumer reporting agencies must remove certain information from credit reports after specified periods of time have passed. *See* 15 U.S.C. § 1681c.

We thus do not accept the plaintiffs' allegation that the separately reported obligations owed to each medical-service provider comprised a single "debt," as the FDCPA defines that term. *Cf. Rhone*, 915 F.3d at 439 ($60 co-pay per physical-therapy session, which added up to $540 owed to a creditor, constituted nine debts of $60 each).[3]

The next aspect of the plaintiffs' challenge we address has to do with their assertions about "tradelines" and "accounts." The plaintiffs allege that Merchants reported as separate "accounts" Zablocki's unpaid charges that were all part of the same "account" with his medical-service provider. The plaintiffs did not make an analogous allegation, in their complaint, regarding Johnson's obligations. But they allege that for both Zablocki's and Johnson's debts, Merchants's separate reporting of unpaid charges caused the plaintiffs' credit reports to display multiple "tradelines" instead of a single "tradeline" reflecting the total sum owed to a creditor.

The terms "account" and "tradeline" are used by TransUnion to describe its business policies. "Account" is also used in the Fair Credit Reporting Act. *See, e.g.*, 15 U.S.C. §§ 1602(k), 1603. But the FDCPA and relevant regulations do not define these terms or use them to prohibit debt-collection practices. It may be that TransUnion has a duty to correct any errors in the implementation of its policies. *See* 15 U.S.C. § 1681i(a). And TransUnion could have a grievance against Merchants for noncompliance with those policies. But § 1692f is not "an enforcement mechanism" for other rules of law, including any that turn on TransUnion's vocabulary. *Beler v.*

---

[3] In their brief responding to Merchants's motion to dismiss, the plaintiffs agreed with Merchants that this case is factually similar to *Rhone*.

*Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007); *cf. Rhone*, 915 F.3d at 440. *See generally* 12 C.F.R. 1022 (providing governing regulations for the Fair Credit Reporting Act).

The plaintiffs recognize that the information reported on each charge (including the amounts owed) was correct. And following our decision in *Rhone*, the plaintiffs do not allege that the separate reporting misrepresented the "character" of the debts, 15 U.S.C. § 1692e(2)(A). Ultimately, then, the plaintiffs' theory stands on the proposition that § 1692f creates a certain rule—a rule that "fair" or "conscionable" debt-collection behavior requires collectors, when reporting debts to a consumer reporting agency, to aggregate together multiple debts owed to a single creditor. Whether § 1692f supplies this rule is a matter of statutory interpretation centering on the phrase "unfair or unconscionable." 15 U.S.C. § 1692f. We approach this matter by viewing the alleged debt-collector conduct through the eyes of an unsophisticated but reasonable consumer. *See Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 997 (7th Cir. 2003).

Although the catch-all phrase at issue—"unfair or unconscionable means to collect or attempt to collect" a debt, 15 U.S.C. § 1692f—is "as vague as they come," that does not mean it has unlimited scope, *Todd v. Collecto, Inc.*, 731 F.3d 734, 739 (7th Cir. 2013) (quoting *Beler*, 480 F.3d at 474). *See Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1308 (11th Cir. 2015) ("A catch-all is not a free-for-all."). Indeed, a term doesn't have to carry unbounded or vast meaning to have uncertain application to a particular factual situation.

The FDCPA does not define "unfair" or "unconscionable" apart from providing eight illustrative examples of "unfair or

unconscionable means" to collect or attempt to collect a debt. 15 U.S.C. § 1692f. The statute specifies that the examples do not "limit[] the general application" of the "unfair or unconscionable means" provision, leaving the full list of permissible applications unannounced. None of the eight listed examples address separate-versus-aggregate reporting of debts. Here is the full text:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
>
> (2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.
>
> (3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.
>
> (4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.
>
> (5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

> (B) there is no present intention to take possession of the property; or

> (C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f.

Zablocki and Johnson argue that the final two examples relate to their theory and thus show that Merchants's separate reporting of debts falls within the general provision's reach. They reason that the examples about postcard and extraneous envelope markings have to do with a person's image or credit reputation, and a debtor looks less creditworthy when obligations on his or her credit report are listed separately instead of aggregated together on a single line.

Regardless whether aggregating debts together makes a debtor appear more creditworthy, the specific prohibitions of postcard notifications and extraneous envelope markings do not bring separate reporting within the general prohibition of

"unfair or unconscionable" debt-collection means. The postcard and envelope examples prohibit collectors from exposing a person's indebtedness on the parts of mail that are visible without opening an envelope. *See Preston v. Midland Credit Mgmt., Inc.*, 948 F.3d 772, 783 (7th Cir. 2020). By contrast, reporting debts aggregated, rather than separately, does not prevent exposure of a person's indebtedness. Either way the debts are reported, the consumer's indebtedness is reported to the consumer reporting agency. And, again, the plaintiffs do not contest the accuracy of the reported amounts. Nor do they allege that Merchants reported the debts to TransUnion without first communicating with Zablocki and Johnson.

So, the listed examples of "unfair or unconscionable" debt-collection behavior do not create the rule on which the plaintiffs rely—that when a debt collector reports debts, the debts owed to a creditor must be reported in the aggregate. Nor do administrative proceedings supply such a rule.

Congress initially authorized the Federal Trade Commission to issue advisory opinions on the scope of vague statutory terms like "unfair" and "unconscionable," and to enforce compliance with the FDCPA. *See* Pub. L. No. 95-109, § 814, 91 Stat. 874, 881–81 (1977); *see also Beler*, 480 F.3d at 473. But we have found no advisory or enforcement opinions bearing on the specific question before us. And, as we've opined before, the agency's commentary on what may qualify as "unfair" conduct is unpersuasive and unhelpful. *See Todd*, 731 F.3d at 739; *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 764 (7th Cir. 2006) (observing that the agency's test for acts that may be "unfair" appears to "preclude recovery for some

of the very conduct explicitly prohibited as 'unfair or unconscionable' by the statute").

Similarly, Congress later granted the Consumer Financial Protection Bureau authority to enforce compliance with the FDCPA and to "prescribe rules with respect to the collection of debts by debt collectors, as defined in [the FDCPA]." 15 U.S.C. § 1692*l*(d); *see* Pub. L. No. 111-203, § 1089, 124 Stat. 1376, 2092–93 (2010) (codified at 15 U.S.C. § 1692*l*(b)(6)). But we have found no rules about whether debts to a single creditor should be reported in the aggregate. *Cf. Rhone*, 915 F.3d at 439. *Compare* 12 C.F.R. 1022, 1022.42 (implementing the Fair Credit Reporting Act), *with* 12 C.F.R. 1006 (implementing the FDCPA). *See generally* 84 Fed. Reg. 23274 (May 21, 2019) (notice of proposed rules governing activities of debt collectors); 85 Fed. Reg. 12672 (Mar. 3, 2020) (supplemental notice of proposed rules).

This leaves us largely "on our own" in answering whether § 1692f prohibits separate reporting of debts. *Rhone*, 915 F.3d at 440.

We conclude the answer is "no." We arrive at this conclusion based on the plain meaning of "unfair" and "unconscionable" in the context of the FDCPA, and the policy-laden questions embedded in the rule that the plaintiffs ask us to declare.

The FDCPA, as a whole, addresses fairness between debt collectors and consumers, and between debt collectors who employ abusive practices and those who do not. *See* 15 U.S.C. § 1692(e) (stating purposes of the FDCPA "to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using

abusive debt collection practices are not competitively disadvantaged").

The ordinary meaning of "unfair" is "marked by injustice, partiality, or deception: unjust, dishonest." Webster's Third New Int'l Dictionary 2494 (1976);[4] *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010). "Unconscionable" has a similar meaning: "not guided or controlled by conscience: unscrupulous"; "excessive, exorbitant"; "lying outside the limits of what is reasonable or acceptable: shockingly unfair, harsh, or unjust: outrageous." Webster's at 2486; *cf.* Black's Law Dictionary 1367 (West Special Deluxe 5th ed. 1979) (defining "unconscionability," regarding contracts, as involving terms "unreasonably favorable" to one party and "gross overall one-sidedness").

Viewing Merchants's separate reporting of debts from the perspective of an unsophisticated but reasonable consumer, we see the alleged conduct as falling outside the scope of these terms. It is reasonable, and not at all deceptive or outrageous, for a collector to report individually debts that correspond to different charges, thereby communicating truthfully how much is owed on each debt. Some consumers may prefer to have their debts reported in a way that conceals debt-specific information, like how much is owed on individual debts, when specific debts were incurred, and which debts are stale. Those consumers may be willing to forego the more detailed information on their credit reports if the aggregated reporting increases their credit scores.

---

[4] Congress enacted the FDCPA in 1977. *See* Pub. L. No. 95-109, 91 Stat. 874 (1977).

But a preference does not necessarily equal an injustice, partiality, or deception. And the debt-reporting rule that the plaintiffs propose would conceal debt-specific information that other consumers may prefer, or be entitled, to see on their credit reports. *See Rhone*, 915 F.3d at 439 (recognizing that aggregated reporting could be misleading). The case before us illustrates the point: had Merchants reported in the aggregate all the debts owed to each creditor, Zablocki's and Johnson's credit reports would not indicate the amounts of each separate debt; when each debt would be removed from the credit report; or other features specific to each obligation. A consumer may find this information valuable or necessary to manage his or her debts. *Cf. Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) (concluding that collector's failure, in a dunning letter, to separate attorney fees from other obligation was misleading and unfair to consumers, impairing their ability to knowledgeably assess debt validity).

If sorting through and weighing these competing interests ultimately shows the plaintiffs' proposed "aggregation" rule to be a wise public policy, then the adoption of that rule should be done by Congress or through the administrative process. Section 1692f does not create that rule on its own. And the courts are not the proper body to issue that rule.

### III. CONCLUSION

Because the district court was correct to dismiss the complaint for failure to state a claim, we AFFIRM.